Anderson *v.* Horst et ux., Appellants.

Argued April 13, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Harry A. Estep*, with him *James T. Philpott*, for appellants.

*A. Devoe P. Miller*, for appellee.

OPINION BY KELLER, P. J., July 15, 1938:

Anderson, the plaintiff, held a mortgage for $4,746 on a property owned in fee simple by the Horsts, the defendants,—husband and wife—as tenants by the entireties, and used by them as a home. They were in default and unable to carry or refund the mortgage

indebtedness. They applied to the Home Owners Loan Corporation, hereinafter called the Corporation, for relief. The Corporation after an investigation agreed to refund the mortgage debt by exchanging for it, with the consent of the mortgagee, $3,775 of Home Owners Loan Corporation bonds and paying $50 in cash for incidental expenses, pursuant to the provisions of the Act of Congress of June 13, 1933, c. 64, 48 Stat. 128, 12 U. S. C. A. sec. 1461 et seq. Anderson, the mortgagee, voluntarily consented and executed a written agreement of release, dated October 7, 1933, by which he agreed, if said refunding could be consummated, to accept the sum of $3,775 face value of the bonds of the Corporation and $50 cash in full settlement of the mortgage for $4,746 and interest from February 18, 1933, and to release all his claim against said property or assign the mortgage or other obligation without recourse to the Corporation. The transaction was consummated. The original bond and mortgage were delivered up in exchange for $3,775 HOLC bonds and $50 cash. Whether the old mortgage was satisfied and a new mortgage covering the amount so paid Anderson was put on record with amortization provisions as provided in the Act, or the original mortgage was reduced by crediting on it the difference between the principal and interest due thereon and the amount given Anderson in settlement—See 12 U. S. C. A. sec. 1467(d)—and an amortization provision attached to the mortgage so reduced, does not appear in this record.

However, it does appear that without the knowledge of the Corporation or its agents, Anderson, prior to the execution of the foregoing consent and release agreement, obtained from John Horst, one of the mortgagors, an agreement to give him, in case said refunding arrangement was consummated, a second mortgage for $450 payable in monthly instalments of $10, with interest at 6% payable semi-annually. And subsequently

after the refunding had been accomplished the Horsts executed and delivered to Anderson a bond and mortgage for $450 payable in monthly instalments of $10, with interest at 6% payable semi-annually. After paying $132.50 on said second mortgage, the Horsts made default in one of the $10 monthly instalments and Anderson entered judgment on the bond accompanying the mortgage and levied on the Horsts' personal property, which was advertised for sale by the sheriff.

The Horsts thereupon filed a petition setting forth the foregoing and that said second mortgage and bond were in violation of the provisions of the Home Owners Loan Corporation Act aforesaid, and obtained a rule to show cause why the levy and sale should not be set aside, and the mortgage recorded in Mortgage Book 2322, p. 124 and the bond accompanying the same ordered set aside, delivered up and cancelled. Anderson filed an answer admitting that the second mortgage and its accompanying bond arose out of a balance due on the indebtedness which had been refunded by the Corporation, and his execution of the agreement consenting to the refunding and his acceptance of $3,775 HOLC bonds in release and settlement of his claim on the mortgage for $4,746. The court discharged the rule and the Horsts appealed. The order will be reversed.

The Home Owners Loan Corporation Act was one of the emergency measures enacted by Congress for the relief of distressed citizens. It was designed for the relief of home owners who were unable to carry or refund their mortgage indebtedness. It provided for the exchange of HOLC bonds in an amount not exceeding 80% of the appraised value of the mortgaged property for the mortgage and bond or other obligation, the Corporation to credit the difference to the home owner and thus reduce the amount owed by the home owner to that extent. It also provided for amortization of the loan by monthly payments sufficient to retire the prin-

cipal and interest, (not exceeding 5%), within a period not to exceed fifteen years. The refunding could not be accomplished without the consent of the mortgagee. But if he consented—and his consent was entirely optional *(Thorne v. Edwards,* 34 Pac. (2d) 640, Oregon)—he must agree to accept said HOLC bonds in full settlement of his claim and release all his claim, or on request to assign the mortgage or other obligation without recourse to the Corporation. The bonds were guaranteed by the United States, and any loss sustained by the Corporation would be the loss of the United States which would have to be made up by general taxation. The purpose of the Act was, by agreement of the parties, to create a novation and reduce the principal of the mortgage debt and the interest, and extend the term of the mortgage, so as to permit the home owner to remain in possession and by monthly payments, not considerable in amount, liquidate both principal and interest within fifteen years. It was not intended for the relief of mortgagees, but they could secure its benefits if they were willing to reduce their claims and accept in settlement HOLC bonds for the reduced amount. The advantage to them was the receipt of readily marketable bonds—for a less amount, it is true—in place of foreclosing their mortgages and buying in real estate for which there was no available market under the depressed conditions prevailing. Nor was it the intention of Congress that the Corporation should merely be substituted for the mortgagee and should foreclose and buy in the mortgage and dispossess the home owner. The purpose and intent was to relieve pressing conditions and give the home owner a chance to work out his salvation. This could not be accomplished if following the refunding, and as a condition for the mortgagee's consent to it, the home owner should be burdened by a reassumption of the debt, or part of it, which had been settled and released. The natural and probable effect

of such an assumption would be to lessen the ability of the home owner to make his amortization payments and thus imperil the plan which Congress had devised for his relief, and load up the Corporation with foreclosed real estate, to the injury of the Government and its taxpayers; and a levy upon and sale of the home owner's furniture and personal effects, which would destroy the character of the property as a home, would have the same effect.

Chapter 6, sec. 4-d (1) of the rules and regulations of the Corporation adopted under authority of section 4 (k) of the Home Owners Loan Corporation Act, 12 U. S. C. A. sec. 1463 (k), provides: "The Corporation will not refund any indebtedness where the mortgagor is required to pay more than he owes, through agreements either to pay future interest to the original mortgagee, or to absorb any loss of interest by the original mortgagee, or to guarantee any difference between the face value of the bonds plus accumulated interest thereon and the market value of the same, or to cover any assumed loss on account of the acceptance of the bonds of the corporation by the mortgagee. The Corporation will not become a party to any contract between a mortgagor and a mortgagee in reference to indebtedness refunded by the Corporation."

We are of opinion, therefore, that an agreement between the mortgagee and the home owner, made without the approval of the Corporation, by which the home owner assumes or agrees to pay all or any part of the mortgage debt which had been settled and released by the refunding effected by the Corporation is void as against public policy and will not be allowed to be enforced by the mortgagee. We recognize that the appellants here were parties to the unlawful agreement no less than the mortgagee, and, because of that, we will not permit them to use our courts to recover back payments made by them pursuant to it; but neither will

we allow our courts to be used by the mortgagee as an instrument to enforce the illegal agreement, but will set it aside as contrary to public policy, when the help of the courts is sought to carry it into effect. See Restatement—Contracts, sec. 512; *Miller v. Ammon*, 145 U. S. 421.

This construction of the Act, and its effect upon subsequent agreements in conflict with or violaton of its terms, is in accord with the great majority of the cases where the question has arisen. See *Jessewich v. Abbene*, 277 N. Y. Supp. 599; *First Citizens Bank & Trust Co. v. Speaker*, 287 N. Y. Supp. 831, affirmed, as to the point here involved, by the Appellate Division in 294 N. Y. Supp. 737, 250 App. Div. 824; *Cook v. Donner*, 145 Kans. 674, 66 Pac. (2d) 587; *Stager v. Junker,* 14 N. J. Misc. 913, 188 A. 440; *Federal Land Bank of St. Paul v. Koslofsky*, 271 N. W. 907, (N. D.); *Federal Land Bank of Columbia v. Blackshear Bank,* 186 S. E. 724 (Ga. Supreme); *Chaves County B. & L. Assn. v. Hodges*, 40 N. M. 326, 59 Pac. (2d) 671, 672. It is not in conflict with *Ridge Investment Corporation v. Nicolosi*, 15 N. J. Misc. 569, 193 A. 710, and *Bay City Bank v. White*, 277 N. W. 888 (Mich.).

We think the opinion of the Supreme Court of New Jersey in *Stager v. Junker*, supra, expresses the principle very clearly: "The Home Owners' Loan Act (48 Stat. 128 [see 12 U. S. C. A. sec. 1461 et seq.]) was intended to provide emergency relief with respect to home mortgage indebtedness, and the rules of the corporation provide that no loan will be made where there was a separate understanding or agreement between the debtor and the holder of the mortgage calling for any payments other than those required by the corporation. The plaintiff, in order to facilitate the loan, stated the full extent of his debt and agreed to accept a definite number of bonds at face value in full settlement thereof. He was then precluded from exacting any further or

other agreement from his debtor looking to the payment of the additional sum. The mere fact that he exacted the instrument in suit, while the negotiations were pending and after he had agreed to accept a definite number of bonds in full settlement, denotes bad faith toward the lending agency. When he agreed to an acceptance of each reduction of bond interest, the acceptance related back to the first agreement and was a reiteration of the promise there made to accept the bonds agreed upon in full settlement of the defendants' obligation in accordance with the rules of the lending corporation deemed necessary to rehabilitate the home owner. By means of the secret agreement the plaintiff could not defeat the express terms of his own agreement to accept the bonds of the lending agency in full settlement of the defendants' obligation."

In *United States v. Kreidler,* 11 Fed. Supp. 402 (D. C. Iowa) it was held that the mortgagee was guilty of making a false statement under section 8(a) of the Act, 12 U. S. C. A. sec. 1467(a), where he concealed from the Corporation the fact that he had an agreement with the home owner mortgagor for the delivery of a second mortgage.

We give no weight or effect to the averment in Anderson's answer that if the supplemental agreement for the second mortgage for $450 "had been submitted by John Horst and Martha Horst, the applicants in the Home Owners Loan Corporation mortgage, the same could and would have been approved as many other loans of a like character were approved by the said Home Owners Loan Corporation." Such an averment is impossible of proof and cannot be considered in this proceeding.

The second, fourth, fifth, sixth and seventh assignments of error are sustained. The order is reversed and the record is remitted to the court below with directions to make the rule absolute.