Keystone Bank of Spangler *v.* Booth, Appellant.

Argued March 27, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

P. J. *Little,* with him *William F. Dill* and *R. E. Farr,* for appellant.

*Albert L. O'Connor,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 25, 1939:

The court below, without making any findings of fact or filing an opinion, discharged defendant's rule to open the judgment herein, after depositions in support of the rule had been taken. From this ruling defendant has appealed on the ground that the action of the court was an abuse of its discretion.

The facts which appear of record, and those which are not disputed by the parties, disclose the following situation. In 1923 Wetherson and his wife obtained a loan of $5,000 from the plaintiff, the Keystone Bank of Spangler, appellee in this court. The Wethersons gave appellee their judgment note, on the back of which was a guaranty of payment signed by appellant Booth and one Paone, with a warrant to confess judgment against them. As security the bank received a mortgage on the Wethersons' homestead, payable to Booth and Paone and by them assigned to the bank; certain payments were

made on the loan, but apparently there was a default, which resulted in the bank having judgment entered against Booth and Paone in August, 1928, in the total sum of $4,945.50. In December, 1934, the bank caused the judgment to be revived for the full amount against both defendants, although in the intervening period certain payments had been made by the Wethersons. The amount of the revived judgment, reëntered on January 19, 1935, with interest to that date, was $6,898.97.

Meanwhile, negotiations had been proceeding for the purpose of refinancing the Wetherson mortgage through the Home Owners' Loan Corporation, hereinafter referred to as "HOLC." On January 17, 1935, the bank, as mortgagee, signed an agreement, addressed to the HOLC, whereby it consented "to accept in full settlement of the claim" against the Wethersons on its mortgage the sum of $1,895.78, and "thereupon to release all the claim of the undersigned [the bank] against said property." The balance due on the mortgage was stated to have been $4,535. Thereafter, on February 18, 1935, the Wethersons signed what was obviously intended as a renewal note in this amount, this being endorsed by Booth. A month later the HOLC bonds, in the amount of $1,887.66, were received by the bank and applied on the note, reducing the principal to $2,647.34, and the mortgage was satisfied. It is admitted by appellee that the amount due on its judgment against appellant is this sum, with interest to the present time and 5 per cent attorney's fee for collection.

After these transactions it became apparent that Booth would not discharge this obligation. In April, 1936, the bank issued execution on its judgment and caused a levy to be made on Booth's personal property. Booth filed a petition to open the judgment, the only substantial grounds alleged being that the amount of the revived judgment was in excess of what was due and that the satisfaction of the mortgage on the Wetherson's property was a fraud on Booth, releasing him

from all obligation on the judgment. By an amendment subsequently filed, Booth alleged as a further ground the agreement of the bank, above set forth, to accept HOLC bonds in full settlement of its claim.

Booth likewise served notice on the bank demanding that it first proceed to collect the claim against the principal obligors, Wetherson and his wife, before levying execution against him. Appellant thereupon issued execution against the Wethersons, but subsequently stayed the levy.

Appellant's first contention is that while the revival of the judgment was in progress, in January, 1935, he was fraudulently dissuaded by an officer of the appellee bank from taking steps to make certain that the judgment was reëntered only for the actual amount then due, and not for the original amount for which it was entered, with interest to the date of revival. This defense would have more weight if appellant had succeeded in showing that the bank was in fact claiming more than was due. On the contrary, the record indicates that the bank has never claimed more than the balance of principal with interest properly computed, and at all times has been willing to accept such a sum in entire satisfaction of the judgment debt. Appellant now has and hereafter will have, on application to the court below, full opportunity to secure reduction in the amount for which the judgment at present stands to the proper figure, as agreed to by appellee. The court below will have authority to open the judgment to such extent as may be necessary to do justice between the parties, and continue it as to the balance: *Franklin v. Morris,* 154 Pa. 152, 26 A. 364; *Weaver v. Painter,* 2 Sadler 395, 3 A. 839. This is the utmost to which appellant is entitled. The court has adequate power to control the judgment and any execution issued thereon, in the interests of justice to the defendant, whether or not the judgment is opened in whole or in part: *Markofski v. Yanks,* 297 Pa. 74, 146 A. 569.

The burden of appellant's complaint is, however, that he is no longer liable to the bank at all and therefore the judgment should never have been revived. He testified that he had no knowledge of the proposal between the bank and the Wethersons to refund the mortgage through the HOLC until after application to the latter had been made; that he was not present at the closing, when HOLC bonds were taken by the bank in exchange for the mortgage; and that it was not until he filed his amended petition to open the judgment, in May of 1936, that he even knew of the bank's written consent to receive HOLC bonds, which was dated January 17, 1935. His testimony, however, when he was examined a second time, after the depositions of the bank's officials had been taken, was somewhat different. He then admitted that he had been present at the meeting of the committee of the bank in September, 1933, when the question of the HOLC settlement of the Wethersons' obligation was brought up and discussed in detail. It is obvious that appellant, who had no connection with the bank, could have attended this meeting only for the purpose of working out a solution for liquidation of the Wetherson loan, upon which he was surety. He admitted, further, that he joined with the bank officials in endeavoring to secure an appraisal of the Wetherson property in order to effect the HOLC settlement, which must have been, of course, before the HOLC closing early in 1935.

Moreover, the cashier and president of the bank testified to the entire transaction in positive and unequivocal terms, the substance of which was that in 1933 appellant broached to the bank the subject of an HOLC loan to relieve the Wethersons and himself, attended the committee meeting in September, 1933, approved the appraisal of the Wetherson property on the basis of which the loan was ultimately made, agreed to guarantee the balance of the Wethersons' debt after deduction of the proceeds of the HOLC bonds, and was at all times fully aware of the bank's intention to look to him as

surety for payment of the difference between these amounts.

The record before us affords ample justification for the refusal of the court below to open the judgment. As we have often said, a petition to open a judgment is addressed to the equitable powers of the court: *Pierce v. Kaseman,* 326 Pa. 280, 192 A. 105; *U. S. Savings & Trust Co. v. Helsel,* 325 Pa. 1, 188 A. 167. The petition need not be granted merely because the judgment debtor produces evidence which, if believed, would constitute a defense: *Schuylkill Trust Co. et al. v. Sobolewski et ux.,* 325 Pa. 422, 190 A. 919. The sole question on appellate review is whether the court of first instance abused its discretion in refusing to open the judgment: *Olney Bank & Trust Co. v. Gettlin,* 318 Pa. 76, 177 A. 794; *Fidelity Title and Trust Co. v. Garrett,* 327 Pa. 305, 194 A. 398. The evidence detailed above makes it manifest that there was no abuse of discretion in this case.

The further question requiring comment is appellant's charge that the bank in signing the consent to take HOLC bonds released its claim against the Wethersons as principals, thereby discharging his obligation as surety. Appellant's testimony standing alone might support a finding to this effect, but in the light of the evidence presented by appellee a different finding is called for, to wit, that throughout the negotiations for an HOLC settlement, lasting over a period of nearly a year and a half, the Wethersons and appellant recognized their obligation for the balance of the indebtedness, after application of the HOLC bonds, and in fact they gave the bank a renewal note for the amount then due. If the principals remained bound, so did the surety. Appellant's contention that his obligation as surety was discharged by the bank's failure to proceed against the Wethersons for the collection of the debt, after written notice to do so under the Act of May 14, 1874, P. L. 157 (8 PS sec. 21), cannot be sustained. It was shown

that the bank promptly complied with the notice to the extent of entering judgment against the principal obligors and issuing execution against them, which was stayed for sufficient reasons. Here the burden was on appellant to prove facts requiring the court, in the exercise of its discretionary power, to open the judgment, but this burden he failed to meet. It does not appear that the bank could have taken any further action against the principals than it did, or that if the execution proceeding had been pursued any benefit would have accrued to appellant. As Chief Justice GIBSON said long ago, in *Gardner et al. v. Ferree,* 15 S. & R. 28, in order to justify his release, after notice to the obligee to proceed against the principal, the surety must "show that his request was reasonable, and that he was deprived of what was not merely a speculative benefit." Appellant failed to show that anything was lost by the bank's failure to follow up its levy on the Wethersons' property; without this, proof of the surety's discharge was insufficient: *Griesmere v. Thorn,* 32 Pa. Superior Ct. 13. What evidence there was on this subject indicated that the principals were execution proof. Where the evidence fails to show that the creditor would have collected anything from the principal, notice to proceed is ineffectual to discharge the surety: *Weiler v. Hoch,* 25 Pa. 525. In the absence of a definite finding on this point by the court below, it must be concluded that the surety was adjudicated liable for the debt because the principal remained so.

What we herein hold does not derogate in any degree the authority of the decision of the Superior Court in *Anderson v. Horst et ux.,* 132 Pa. Superior Ct. 140, 200 A. 721, which held void and unenforceable an agreement by the mortgagor, in a situation similar to the one now before us, to remain bound on the balance of the original indebtedness, after acceptance by the mortgagee of HOLC bonds in full discharge of the obligation represented by the prior mortgage. In that case the

latest authorities on this subject were considered and reviewed by the court upon a record wherein the factual background was fully developed. Here the appellant has submitted a record inadequate for a pronouncement that the obligation of the Wethersons on the renewal note, indorsed by appellant, is null and void. The HOLC Act itself (12 U. S. C. sections 1461 et seq.) does not preclude such undertakings by a home owner to remain bound. The regulations of the corporation in force at the time of this refinancing are not before us for consideration. See *Anderson v. Horst,* supra, at p. 145. It has been held that the validity of such agreements to remain bound is largely dependent on the presence or absence of a prohibition in the regulations adopted by the corporation: *McAllister v. Drapeau* (Calif. App.), 85 P. (2d) 523. Matters to be considered are the absence of collusion or concealment of the obligation from the authorized officials of the government agency, and their consent to the mortgagor's continued obligation for the balance: see *Bay City Bank v. White,* 283 Mich. 267, 277 N. W. 888; *Ridge Investment Corp. v. Nicolosi,* 15 N. J. Misc. 569, 193 A. 710. The value of the property as compared with the total amount of the obligations assumed by the home owner is a circumstance to be considered: *Meek v. Wilson,* 283 Mich. 679, 278 N. W. 731; *Ridge Investment Corp. v. Nicolosi,* supra. The record before us is barren of evidence relating to these matters. We cannot say that the court below abused its discretion in refusing to hold that the continued obligation of the Wethersons for the balance due the bank, and hence of appellant as surety, was void on grounds of public policy.

The order of the court below discharging the rule to open the judgment is affirmed, without prejudice to appellant's right to apply in the court below for reduction of the amount of the judgment in the manner heretofore directed; costs to be paid by appellant.