HOME OWNERS LOAN CORPORATION *vs.* IRENE AIELLO *et al.*

APRIL 17, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is a bill in equity brought by the complainant against several respondents, one of whom is The Wardwell Lumber Company, a Rhode Island corporation, which holds a recorded first mortgage on two lots of land in Bristol in this state, a garage being located on one of said lots.

After a hearing of the cause on its merits before a justice of the superior court, he entered a final decree granting to the complainant the relief for which it prayed against all the respondents. From the entry of this decree the only respondent to prosecute an appeal to this court was The Wardwell Lumber Company, and the cause is now before us solely upon that appeal.

The decree in question, in so far as the respondent The Wardwell Lumber Company is concerned, provided that the complainant, by reason of certain rights of subrogation, had a first mortgage lien upon the property hereinbefore described, which lien was prior to the mortgage lien of The Wardwell Lumber Company.

The following facts pertinent to this appeal appear from the evidence. The Aiellos, husband and wife, as owners of three lots of land with improvements thereon in Bristol, on September 11, 1933 applied in writing to the complainant for a loan of $4,000. These three lots were adjoining and together formed one large parcel of land. On one of the lots was a dwelling house; on another was a two-car garage; and the third lot, which lay between the other two, was vacant. At the time this application was made the entire property was subject to three mortgages. The first for $2500 was held by the Industrial Trust Company and the second, for $1511.40, by The Wardwell Lumber Company. The third mortgage, which stood in the name of a son of the Aiellos, was later discharged and does not enter into the consideration of this appeal.

Apparently the customary procedure was followed by the complainant in connection with the above application. The title to the property in question was examined and approved, and a final appraisal fixed its value at $5866. On this figure the complainant agreed to advance to the Aiellos $4690. In April 1934, the first and second mortgagees each signed written consents to take bonds of the complainant corporation in discharge of their respective mortgages and notes. The

matter was finally closed June 4, 1934, at which time the Industrial Trust Company received from the complainant bonds amounting to $2675, together with certain accrued interest and a cash adjustment, making a total of $2694.62, for which it discharged its mortgage and surrendered its mortgage note. A similar procedure was followed with The Wardwell Lumber Company mortgage. However, there was due in April under that mortgage, which provided for interest at the rate of 10%, the sum of $2127.63 for which The Wardwell Lumber Company consented to take $2125 in bonds; but the amount it actually accepted in bonds was $1850 and in addition accrued interest and cash which made a total of $1858.16. It also discharged its mortgage and surrendered its mortgage note.

The evidence likewise shows that when the transaction was finally closed on June 4, 1934, the mortgage which the Aiellos then executed for $4690 in favor of the complainant, after the discharge of the previous first and second mortgages, covered only one of the lots in question, namely, that upon which the dwelling house was located. Further, on the same day and at the same time and place the Aiellos executed to The Wardwell Lumber Company a mortgage for $350 covering the other two lots, on one of which was the garage above referred to. The apparent purpose of this last-mentioned mortgage, as between The Wardwell Lumber Company and the Aiellos, was to provide security for that part of the claim of The Wardwell Lumber Company which had not been paid by bonds of the complainant corporation. Thereafter it was discovered in the complainant's regional office that its first mortgage covered only part of the Aiello property instead of all. The bill now before us, alleging mistake and fraud, was then brought in order to rectify the situation and provide the complainant with a first mortgage on the entire Aiello property as security for the loan it had made to them.

Several cases from other jurisdictions involving loans made by the complainant corporation have been called to our attention. These cases differ from the instant case in that the home owner and the original mortgagee therein were the parties concerned and the complainant corporation was not a party. They are cases in which the original mortgagee, who had discharged his mortgage and surrendered his note upon accepting bonds of the complainant, was nevertheless seeking to enforce against the home owner an agreement or other obligation, in certain instances a second or other mortgage, entered into by the parties in order to cover, for such mortgagee's benefit, the portion of the original indebtedness not taken care of by the complainant's bonds.

In nearly all of the cases above referred to it was held that the new agreement or obligation was void and not enforceable against the home owner. While some of the opinions in these cases refer to the fact that the evidence therein showed that the agreement or obligation in question was entered into secretly and with fraud or collusion, the chief ground upon which the decisions rest is that it is against the spirit and purpose of the act creating the complainant corporation and against public policy to permit the enforcement of such an agreement or obligation. The following cases in general so hold: *Cook* v. *Donner,* 145 Kan. 674; *Meek* v. *Wilson,* 278 N. W. 731 (*Mich.*); *Chaves County Bldg. & Loan Ass'n.* v. *Hodges,* 40 N. M. 326; *Stager* v. *Junker,* 14 N. J. Misc. 913; *Markowitz* v. *Berg,* 4 A. 2d. 410 (N. J.); *Anderson* v. *Horst,* 132 Pa. Super. 140; *First Citizens Bank & Trust Co.* v. *Speaker,* 287 N. Y. S. 831 (250 App. Div 824).

In *Meek* v. *Wilson, supra,* in pointing out the objects of the act under which the complainant corporation was created, the court uses this language at page 734: "Its purpose was not to assist holders of liens against the property, but to enable owners of homes to save their homes from foreclosure by advancing on first mortgages, sums to be used

to pay off liens and to lighten the burdens of the home owners. Any benefit that might accrue to lienholders would be incidental. The H. O. L. C., in refinancing a home owner's obligations, sought to readjust them in accordance with his ability to make payments."

In *Ridge Investment Corp.* v. *Nicolosi,* 15 N. J. Misc. 569 and *Bay City Bank* v. *White,* 283 Mich. 267, the original mortgagees were allowed to enforce against a home owner new agreements or obligations entered into by them. It clearly appears, however, from the opinions in those cases that they depend upon the existence of certain facts and circumstances not present in the cases first cited.

But, in our opinion, we are not now called upon to determine whether or not the Aiello's note for $350, held by The Wardwell Lumber Company and secured by the mortgage on two of the Aiello lots, is valid and enforceable, or void as against public policy. That question might possibly arise if The Wardwell Lumber Company sought to enforce that claim against the Aiellos, and in deciding the present cause we leave such question unanswered.

Apparently, under certain specified conditions, the rules and regulations legally adopted by the complainant corporation do permit, with its consent, the imposition of a second mortgage on the property of a home owner, to follow the complainant's first mortgage thereon. Further, in the bill now before us the complainant is not asking the court to hold that the note and mortgage for $350 just above mentioned are void and unenforceable. The complainant is merely seeking to have its first mortgage cover all the Aiello's property, including the two lots and improvements thereon described in The Wardwell Lumber Company mortgage for $350, and to have said first mortgage a lien on all the Aiello property prior to such lien, if any, as The Wardwell Lumber Company may have on the two lots in question by virtue of its said mortgage for $350.

In deciding that the complainant was entitled to the re-

lief for which it prayed the trial justice found, among other things, that it clearly appeared from the evidence that the Aiellos and the complainant corporation intended that the mortgage, which was to be given by the former to the latter when the loan was made, should be a first lien on the entire Aiello property. In addition, he found that The Wardwell Lumber Company also expected that the complainant would have a first mortgage on all three lots of the Aiellos. He further held that, by reason of a mutual mistake of fact, this intended arrangement was not carried out. An examination of the evidence leads us to the conclusion that the above findings were correct.

As to the complainant corporation and the Aiellos, the findings are supported by the statements in the written application for the loan; the conduct of the complainant in connection with the examination of the title and the appraisal of the entire property, upon which appraisal the amount of the loan was based; and also by evidence relating to the practice and procedure of the complainant corporation under its rules and regulations regarding the taking of mortgages. As to The Wardwell Lumber Company, its conduct in signing a consent to take bonds of the complainant corporation and its surrender of its second mortgage note and the discharge of its second mortgage, which covered the entire Aiello property, in our-judgment, warranted the finding of the trial justice that such acts were knowingly performed by The Wardwell Lumber Company in order to permit the complainant corporation to take as security for its loan a first mortgage on all the Aiello property.

The Wardwell Lumber Company, however, contends that some time prior to June 4, 1934, it refused to discharge its second mortgage unless it received some security for the Aiello indebtedness to it in addition to bonds amounting to $1850. Because of this refusal, The Wardwell Lumber Company maintains that an understanding was had between it and the closing fee attorney of the complainant corporation

that, in addition to receiving $1850 in bonds, The Wardwell Lumber Company could take a mortgage on lots 38 and 39 of the Aiello property; and that, pursuant to such understanding, the closing fee attorney on June 4, 1934, when the entire transaction was consummated, made a statement in substance that the complainant corporation was not interested in lots 38 and 39, and that the Aiellos could do as they wished with them. Evidence was introduced by The Wardwell Lumber Company in support of the above contentions.

We are of the opinion, however, that the alleged understanding, as set out by The Wardwell Lumber Company in its evidence, does not constitute a valid defense to the case proved by the complainant under its bill of complaint. Assuming that there was any such understanding as is claimed by The Wardwell Lumber Company, it is clear that the authority of a fee attorney of the complainant corporation, whose duty it is to close the transaction in question, is very limited.

On this same point the court in *Markowitz* v. *Berg, supra,* at page 413 held as follows: "But the complainant contends that the fee attorney was the agent of the H. O. L. C. and since he had knowledge of the execution of the second mortgage, that knowledge was the knowledge of the corporation. This contention is unsound. From the evidence it is clear that the authority of the fee attorney was limited to an examination of the title and at the closing (after adjustment of the encumbrances against the property) to deliver the bond authorizations to the various encumbrancers and to receive from the mortgagors a first lien bond and mortgage to the H. O. L. C. There is no proof before me that the fee attorney possessed the power to bind the H. O. L. C. and to approve the giving of the mortgage. The fee attorney was a special agent of the corporation without authority from it to either approve of, or permit complainant to take a second mortgage. Where the question of agency arises the power of the special agent to do the act must be shown."

In the instant cause no proof appears that the closing fee attorney possessed any such authority, as The Wardwell Lumber Company contends he had, to bind the complainant corporation, as its agent, in connection with the mortgage for $350 taken by The Wardwell Lumber Company. Such proof as there is in the present cause regarding the authority and duties of such a closing fee attorney is contrary to the above contention of The Wardwell Lumber Company.

It seems clear from the evidence herein that the present situation was brought about by a mistake or misunderstanding on the part of the person who drew the mortgage to be taken by the complainant corporation from the Aiellos, or by a mistake or misunderstanding on the part of the complainant's closing fee attorney, at the time the matter was put through. The respondent The Wardwell Lumber Company took advantage of this mutual mistake on the part of the mortgagor and the mortgagee, *viz.*, the Aiellos and the complainant corporation, to obtain from the former a first mortgage for $350 on two lots which were originally intended to be included in the complainant corporation's first mortgage.

In view of all the facts and circumstances appearing in this cause, we are of the opinion that the respondent, The Wardwell Lumber Company, has not shown any such equitable right as would compel the court to give it recognition ahead of the complainant's right to obtain the relief for which it prays. The respondent, The Wardwell Lumber Company, argues that it is, in substance, an innocent party which changed its position by reason of the conduct or statements of agents of the complainant corporation, acting within the scope of their authority, and will suffer damage if the decision of the trial justice stands. In our judgment, for the reasons hereinbefore set out, this contention is not tenable on the evidence presented in this case.

The appeal of the respondent, The Wardwell Lumber Company, is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the superior court for further proceedings.

*McKiernan, McElroy & Going, Peter W. McKiernan, John C. Going, George F. Triedman, State Counsel,* for complainant.

*Emilio D. Iannuccillo,* for respondent.