## Home Owners' Loan Corporation v. Vance et al.

*T. J. Purdy* and *Eugene J. Corrigan*, for plaintiff.
*Laird Gemberling* and *James McClure*, for defendants.

GILBERT, P. J., September 14, 1942. — Jacob M. Vance and wife, Mary Vance, were the owners of a house and lot, 212 North Broadway Street, Selinsgrove, Pa. James Bickhart, now deceased, of Selinsgrove, Pa., owned a mortgage against this real estate. He demanded his money. The Vances arranged with the Home Owners' Loan Corporation to finance this mortgage, Bickhart agreed to accept $2,500 in full for his mortgage debt, and agreed to satisfy the mortgage. Bickhart received his money in full settlement, and satisfied his mortgage.

On November 1, 1933, Jacob M. Vance and wife executed a mortgage in favor of the Home Owners' Loan Corporation, which mortgage was recorded by the recorder of deeds at Middleburg, Pa., on November 3, 1933, and is of record in mortgage book 19, p. 570. The time of recording this mortgage was not noted, and the deputy recorder, Paul Billhardt, who received it for record is deceased.

On November 3, 1933, Vance and wife executed and delivered to said James Bickhart another mortgage, recorded as aforesaid, in mortgage book 19, p. 573. The time of recording this mortgage was not noted by the deputy recorder, Paul Billhardt.

Therefore, the record shows both mortgages recorded November 3, 1933, neither record showing the time of day it was filed for record, and no oral evidence is available, because all parties are deceased.

The Home Owners' Loan Corporation issued a fieri facias, to June term, 1941, no. 8, sold the Vance real estate, and the Sheriff of Snyder County made a return to June term, 1941, prorating the proceeds of this real estate sale between the two mortgagees.

On June 5, 1941, the two mortgagees, by their counsel, filed a case stated after exceptions were taken to the sheriff's return requesting the court to distribute the fund. This case stated was brought to the attention of the present court in June 1942, and, therefore, this delayed opinion.

There is not sufficient money to pay both mortgages, and the duty of the court will be to determine which of the two mortgages has a preference, or whether to prorate this fund.

No oral evidence is obtainable as all parties who could enlighten us are deceased. Therefore, we must find the answer in the records alone.

". . . from and after the passage of this act, all mortgages, or defeasible deeds in the nature of mortgages, made or to be made or executed for any lands, tenements, or hereditaments within this Commonwealth, shall have priority according to the date of recording the same, without regard to the time of making or executing such deeds; and it shall be the duty of the recorder to endorse the time upon the mortgages or defeasible deeds, when left for record, and to number the same according to the time they are left for record, and, if two or more are left upon the same day, they shall have priority according to the time they are left at the office for record. No mortgage, or defeasible deed in the nature of a mortgage, shall be a lien, until such mortgage or defeasible deed shall have been recorded, or left for record, as aforesaid": Act of April 27, 1927, P. L. 440, sec. 1.

On November 3, 1933, James Bickhart, as shown by the records, was present in person in the recorder's office at Middleburg, Pa., and signed, under seal, the following satisfaction of his $2,500 mortgage against Jacob M. Vance and wife:

"November 3rd, 1933, I, James Bickhart, for value received, do hereby satisfy this mortgage in full for principal, interest and costs. James Bickhart (Seal). Witness: Paul Billhardt."

This mortgage was dated August 28, 1926, for a $2,500 debt, and was recorded August 30, 1926, in mortgage book 18, p. 193.

At the time of its satisfaction there were no credits of either principal or interest on this mortgage.

On the same day, in the recorder's office, James Bickhart received the $2,500, which he had agreed in writing to accept in full for his said mortgage.

This, according to the record, paid to Bickhart his principal debt of $2,500, but no interest.

On said November 3, 1933, the Home Owners' Loan Corporation then filed for record with the deputy recorder, Paul Billhardt, its $2,500 mortgage against Jacob M. Vance and wife.

The same day James Bickhart filed for record another mortgage against Jacob M. Vance and wife for $525.

Neither mortgage was timed as required by the Act of April 27, 1927, P. L. 440.

The $2,500 mortgage of James Bickhart against Jacob M. Vance and wife, satisfied on November 3, 1933, was a first lien; and this first lien Bickhart agreed in writing to assign to the Home Owners' Loan Corporation. But the Home Owners' Loan Corporation accepted a satisfaction instead of an assignment. However, the Home Owners' Loan Corporation had Bickhart's written agreement to give the Home Owners' Loan Corporation a first lien against Vance and wife.

There is a presumption of regularity in all transactions. We must, therefore, assume that James Bickhart, by recording his $525 mortgage on November 3, 1933, did not intend to jeopardize the first lien of the Home Owners' Loan Corporation, which he had agreed in writing to give them.

Again we must assume that the Home Owners' Loan Corporation would not have paid Bickhart the $2,500 for his first lien mortgage, and requested its satisfac-

tion, if Bickhart had already filed his $525 mortgage for record.

Again we must assume that Bickhart expected and intended his $525 mortgage to be timed by the recorder, according to the statutory requirements, and become a second lien. Or, if Bickhart, by filing for record his $525 mortgage, intended to jeopardize the first lien position of the $2,500 Home Owners' Loan Corporation mortgage against Vance and wife, then Bickhart was guilty of a fraud, in violation of his written agreement to assign his first lien mortgage, and the court strikes down fraud wherever it appears.

The record shows that the Home Owners' Loan Corporation $2,500 mortgage was recorded prior to the $525 mortgage, as per custom of the recorder, and this is at least persuasive evidence.

Again Vance and wife are charged in the original mortgage with about seven years' interest on $525, and there is no record evidence of any payment thereon.

We must conclude that, in good faith, Bickhart entered his $525 mortgage as a second lien, or that in violation of his written agreement he attempted to jeopardize the first lien position of the Home Owners' Loan Corporation mortgage.

In Anderson v. Horst et ux., 132 Pa. Superior Ct. 140, this kind of conduct, in practically similar circumstances, was condemned as against public policy.

An innocent third party would have a better standing than Bickhart in this transaction.

James Bickhart agreed, in consideration of the payment to him by the Home Owners' Loan Corporation of the $2,500 principal debt Jacob M. Vance and wife owed him, as represented by a mortgage, to assign that first lien mortgage to the Home Owners' Loan Corporation, then, in having another mortgage entered the same day as the Home Owners' Loan Corporation entered its mortgage against the Vances, said Bickhart jeopardized the Home Owners' Loan Corporation first

lien, and nullified it. Whether Bickhart did this through fraud, accident or mistake, he cannot void his contract to assign and give to the Home Owners' Loan Corporation a first lien. Therefore, the net proceeds of sheriff's sale of the Vance real estate are hereby awarded to the Home Owners' Loan Corporation and exceptions to the sheriff's distribution prorating this fund between the two mortgagees are sustained.