## SMITH v. REDWINE. No. 1.—168 S. W. (2d) 185.

Eastern Section.   November 27, 1942.

Petition for Certiorari denied by Supreme Court, February 6, 1943.

F. G. Redwine, of Chattanooga, and J. Thos. Dunn, of Memphis, for appellant.

J. C. Wagner, of Chattanooga, for appellee.

BURNETT, J.   This suit originated in the Chancery Court of Hamilton County.   It was filed by Myrtle Smith against Annie Wolfe Redwine (formerly Annie Wolfe)

on a note, secured by deed of trust, for $156, with interest from the maturity of the note, and attorneys fees.

A demurrer was filed which was seasonably overruled upon certain amendments being made at the suggestion of the Chancellor. These amendments were made and answers filed by the defendant and the Home Owners' Loan Corporation, holder of the senior mortgage. The defendant urged that the giving of this note and deed of trust as a junior deed of trust to that of the Home Owners' Loan Corporation is in contravention of public policy, fraudulent and void, and in violation of the Act of Congress establishing said H. O. L. C. 12 U. S. C. A., sec. 1461 et seq.

It is argued here, and assigned as error (apparently for the first time), that the note and deed of trust are likewise void because of an apparent change on the face of the trust deed in its date. It is likewise argued here (apparently for the first time) that there has been a payment of the note.

The Chancellor found as a fact that the plaintiff had not entered into any collusive agreement with the defendant to obtain more than was assented to by the H. O. L. C.; that the appraised value of the property exceeded the loan made by H. O. L. C. and the note sued on in this case; that the defendant and complainant's husband had entered into an agreement to a second mortgage (here sued on) which was approved by the State Manager of the H. O. L. C.; that under this agreement the note and deed of trust securing same was to be paid at the rate of $5 per month, which payments were to begin three years after the recording of the deed of trust to the H. O. L. C., which was November 19, 1935; that only one payment had been made on said note to-wit, $9.36; that the entire note was due and that the complainant was entitled to a

judgment for the amount of the note plus interest from maturity, April 15, 1937, and an attorney's fee of $25, aggregating $199.72; that said property as described in the deed of trust and pleadings should be sold by the clerk and master subject to the superior deed of trust held by H. O. L. C. and in bar of the equities of redemption, dower and homestead, the same having been waived in the deed of trust.

These findings are supported by the evidence submitted at the hearing as disclosed by the state of the case before us. (The entire evidence as shown by the record is a stipulation putting in evidence the original note and deed of trust, a copy of the agreement approved by H. O. L. C. and a statement by the Chancellor of what evidence he had heard.) We concur in the findings of the Chancellor.

There is no reference made by the Chancellor in his finding of fact to the payment of $150 by the defendant to complainant. We are entirely satisfied though, upon the whole record, that this payment was one made before the note and deed of trust in question were ever made— probably the cash payment made in the purchase of the property. The original note filed with the record shows a payment of $9.36 on October 15, 1937. The statement of complainant (which is the only testimony on the subject) clearly points to the correctness of our finding.

The date of the trust deed is apparently changed. The typewritten date has apparently been changed by pen and ink to read April 20th while the acknowledgment was taken April 15th, 1935. The trust deed was not filed for registration until almost six years after its date. There is not one scintilla of evidence about any change—there is nothing to show that the above noted discrepancy was not made after recording of the instrument. The agreement by all the parties with the H. O. L. C. bears date of

April 20, 1935. The Chancellor found the correct date of the note to be April 15, 1935, and in this we agree:

· Under this record we have treated the matter as if on a broad general appeal and have considered all matters even though the statement made at the hearing would indicate that—"The only questions involved was whether or not the note and the second mortgage and agreement were valid."

The Home Owners' Loan Act of 1933, 48 U. S. Stats. at Large 128, 12 U. S. C. A., sec. 1461 et seq., declares that the act was passed "to provide emergency relief with respect to home mortgage indebtedness, to refinance home mortgages, to extend relief to the owners of homes occupied by them and who are unable to amortize their debt elsewhere. . . ." Briefly, the act provides that the Federal Home Loan Bank Board is authorized to create a corporation to be known as the Home Owners' Loan Corporation as an instrumentality of the United States; to refinance existing home mortgages and to redeem or repurchase home properties already foreclosed. The act also empowered the board to "make such bylaws, rules and regulations, not inconsistent with the provisions of this section, as may be necessary for the proper conduct of the affairs of the Corporation." 12 U. S. C. A., sec. 1463(k). Acting pursuant to this power, the board adopted several resolutions outlining the policy to be adopted towards the making of loans when the creditor insisted on a second mortgage to secure part of the refunded debt. The following regulation was adopted by the Board, and by such adoption became the law with reference thereto:

"d. Liens Ineligible for Refinancing.

" (1) Incidendal Agreements—The Corporation will not refund any indebtedness where the mortgagor is re-

quired to pay more than he owes, through agreements either to pay future interest to the original mortgagee, or to absorb any loss of interest by the original mortgagee, or to guarantee any difference between the face value of the bonds plus accumulated interest thereon and the market value of the same, or to cover any assumed loss on account of acceptance of the bonds of the Corporation by the mortgagee. The Corporation will not become a party to any contract between a mortgagor and a mortgagee in reference to indebtedness refunded by the Corporation.

"(2) Second Mortgages—Where the full amount of the indebtedness against the property cannot be refunded by the Corporation, the mortgagee or other lien holder will be permitted to take a second mortgage or second deed of trust if the amount of such second mortgage or deed of trust does not exceed the difference between the Corporation's appraisal and the amount of the Corporation's first mortgage. In no case shall the second trust or second mortgage to such other mortgagee or lien holder be in terms which would cause the mortgagor's payments to the Corporation to be a hardship, or deprive the mortgagor of reasonable opportunity (sic) to pay such second trust." (Section 4, d., (1) and (2) of Chapter VI of the Manual of Rules and Regulations of the Home Owners' Loan Corporation adopted by the Board of Directors on August 21, 1934, effective October 10, 1934.

The loan made by the H. O. L. C. and that by the complainant herein aggregates less than the appraisal value of the property in question. This being true the State Manager of the H. O. L. C. approved the loan made by the complainant and her husband under certain conditions, all of which have now been met.

The courts have uniformly held that secret second liens to a senior lien of the H. O. L. C. are void and unenforceable. McAllister v. Drapeau, 14 Cal. (2d) 102, 92 P. (2d) 911, 125 A. L. R. 800; and numerous authorities therein cited. But where the second lien was taken by the creditor with full knowledge of the H. O. L. C., it has uniformly been held that they are valid and enforceable. Bay City Bank v. White, 283 Mich. 267, 277 N. W. 888; Ridge Investment Corp. v. Nicolosi, 193 A. 710, 15 N. J. Misc. 569.