BAY CITY BANK *v*. WHITE.

1. MORTGAGES—PURPOSE OF HOME OWNERS' LOAN ACT—REDUCTION
   OF DEBT—AMORTIZATION.

   The purpose of the home owners' loan act is to save the small
   home owner from loss of the home by refinancing same up to
   80 per cent. of its appraisal value and to enable him to
   amortize the mortgage by monthly payments on principal and
   interest by a reduction of the amount of the owner's debt with
   the consent of the mortgagee (48 Stat. at L. chap. 64).

2. CHATTEL   MORTGAGES—VALIDITY—REPURCHASE   OF   HOME—USE
   OF HOME OWNERS' LOAN CORPORATION BONDS.

   In transaction which took place after expiration of period of re-
   demption from foreclosure of plaintiff's mortgage on defend-
   ants' home, whereby latter effected a repurchase thereof by
   giving plaintiff Home Owners', Loan Corporation bonds and
   chattel mortgage in form of bill of sale of cottage and garage,
   owned by defendants on land in which they held a leasehold
   interest, securing note for difference between bonds and in-
   terest plaintiff had in the home, such chattel mortgage and
   note *held*, not void and unenforceable because contrary to mort-
   gagee's consent to take bonds whereby it waived all claims
   against the property or applicant for loan from the Home
   Owners' Loan Corporation arising from such property since
   the chattel mortgage and note were in part payment for the
   repurchase of the home, pertained to other property than that
   covered by the bonds and not used in connection therewith and
   full details of entire transaction were disclosed to representa-
   tives of the Corporation (48 Stat. at L. chap. 64).

Appeal from Bay; McCormick (James L.), J.
Submitted January 6, 1938. (Docket No. 66, Cal-
endar No. 39,760.) Decided February 24, 1938.

Bill by Bay City Bank against W. Ernest White and Rosemary C. White to foreclose a chattel mortgage and for a deficiency decree. Suggestion of death of defendant W. Ernest White. Rosemary C. White, administratrix of the estate of W. Ernest White, substituted as party defendant. Decree for plaintiff. Defendant appeals. Affirmed.

*Lloyd W. Bartlett,* for plaintiff.

*B. J. Tally,* for defendant.

North, J. Plaintiff filed a bill for foreclosure of a chattel mortgage and a deficiency decree. After the case was tried in the circuit court but before entry of decree, defendant W. Ernest White died and Rosemary C. White as administratrix was substituted in the place of deceased. The chattel mortgage in suit (in form of a bill of sale) covered a cottage and garage owned by defendants on land in which they held a leasehold interest, and was given to secure a promissory note, dated April 26, 1934, in the principal amount of $1,176.62. There was default and on foreclosure plaintiff purchased the property for $1,000, and had decree for deficiency of approximately $300. This appeal followed.

The defense is that the note and chattel mortgage are void and unenforceable being in violation of the home owners' loan act of 1933 (48 Stat. at L. chap. 64 [12 USCA, § 1461 *et seq.*]) and against public policy. This defense necessitates a review of the transaction leading up to the execution of the note and bill of sale.

Defendants owned a home in Bay City subject to a mortgage in favor of plaintiff bank. There was default in the mortgage payments, the mortgage

was foreclosed and a sheriff's deed for the premises was issued to plaintiff on August 13, 1932. Defendants failed to redeem the property and title became absolute in plaintiff. Plaintiff desired to give defendants a further opportunity to save their home and suggested that they make an application for a Home Owners' Loan Corporation loan. Plaintiff prepared the application, which was signed by defendants, and it was submitted to the Saginaw office of the Home Owners' Loan Corporation. After an appraisal of the property, an offer was submitted of $3,200 in Home Owners' Loan Corporation bonds for the bank's interest in the property. According to the policy of the Home Owners' Loan Corporation, before they purchased a mortgagee's interest in a homestead such mortgagee was required to sign a "mortgagee's consent to take bonds." This instrument, which was submitted to plaintiff, contained a paragraph reading as follows:

"The acceptance of this consent by the undersigned constitutes a waiver by you of any and all claims which you may have at this time against either the property involved or the applicant for a loan with the Home Owners' Loan Corporation named in this consent arising from this property."

At this time the bank had an interest of $4,376.62 in the property and was unwilling to release its claim for the amount offered by the Home Owners' Loan Corporation. However, after further negotiations defendants agreed to give the note in suit, in the sum of $1,176.62 (being the difference between plaintiff's claim and the amount of the Home Owners' Loan Corporation offer) secured by the bill of sale covering the cottage and garage owned by defendants. Before the transaction was consummated the whole arrangement was discussed between the

assistant cashier of the plaintiff bank and a representative of the Home Owners' Loan Corporation and received the latter's approval. Concerning the conversation at the Home Owners' Loan Corporation office, Mr. Bamford, assistant cashier of the plaintiff bank, gave the following uncontradicted testimony:

"Prior to the signing of exhibits 1 (the note), 2 (the bill of sale) and 3 (the mortgagee's consent to take bonds), I had several discussions with Mr. and Mrs. White. My bank received exhibits 1 and 2 and $3,200 in Home Owners' Loan Corporation bonds. I discussed this with the Home Owners' Loan Corporation, in their office. I talked to Mr. Lawler.

"*Q.* Did you at that time present to him the proposition which was carried through later here?

"*A.* Yes, I talked the whole proposition over with them thoroughly.

"*Q.* Advised them of the total amount?

"*A.* Advised them of the total amount, and asked them for their consent to handle the matter in that way, to take additional security—of the security it would take, a bill of sale on the cottage to apply on our mortgage, and afterwards sent an acceptance of the $3,200 in home owners' loan bonds for the balance of the loan.

"*Q.* The Mr. Lawler you talked to was in the Home Owners' Loan Corporation office?

"*A.* Yes, Saginaw branch of the Home Owners' Loan Corporation.

"*Q.* And did he object to that, or was he agreeable to it?

"*A.* He was agreeable to it. * * * Mr. Lawler told me he would consent to allow that separate transaction to go through between the bank and the Whites."

The transaction was completed on April 26, 1934, by the execution of the note and bill of sale by defendants, and the mortgagee's consent to take bonds

by plaintiff. Further, when the consent to take
bonds was forwarded to the office of the Home
Owners' Loan Corporation on May 3, 1934, the bank
again reiterated the details of the arrangement fi-
nally entered into in a letter reading as follows:

"Home Owners' Loan Corporation,
"207 Goff Building,
"Saginaw, Michigan.
    "Attention: Mr. Lawler.
*"Dear Sir:*
    "We are inclosing herein mortgagee's consent to
take bonds in the sum of $3,200 in settlement of our
interest in the property of W. Ernest White, located
at 2156 Fourth avenue, Bay City, Michigan.
    "This matter has been held up for several days
during which time arrangements were made for the
balance of our claim. The bill of sale on the summer
cottage regarding which the writer talked to you on
his last visit to Saginaw has been completed and our
mortgage now reduced to the above mentioned sum
of $3,200."

As hereinbefore stated, the defense urged is that
the part of the transaction which resulted in de-
fendant's giving the note and chattel mortgage,
being in violation of the spirit of the home owners'
loan act, was contrary to public policy and there-
fore unenforceable. Cases involving legal questions
of this character are of comparatively recent origin;
and there is seeming conflict in the decisions. The
purpose sought to be accomplished by the organiza-
tion and the contemplated activities of the Home
Owners' Loan Corporation is stated in one of the
decisions as follows:

    "To save homes from threatened or pending fore-
closures, to save lifetime savings investments of
home owners in distress, to save them from becom-
ing paupers, and is the rehabilitating agency to

guard and protect the small home owner by judiciously refinancing his obligations with enough to pay all the incumbrances on his home, but limiting the new mortgage to 80 per cent. of its appraisal value for the property, so he can meet his amortized mortgage by monthly payments on principal with interest." *Jessewich* v. *Abbene,* 154 Misc. 768 (277 N. Y. Supp. 599).

In another case it is stated:

"It has been held that the courts should take judicial notice of the fact that the Home Owners' Loan Corporation is strictly a relief agency, organized to aid distressed home owners in saving their homes. The reduction in the amount of the home owner's debt (which, of course, can be accomplished only with the consent of his creditor) is the most effective aid, in most instances, which can be rendered to him. * * * The Home Owners' Loan Corporation is interested in the reduction of the indebtedness of the home owner who procures a loan." *Chaves County Building & Loan Ass'n* v. *Hodges,* 40 N. M. 326 (59 Pac. [2d] 671).

Other decisions bearing upon the phase of the law here involved will be found in the following cases: *First Citizens Bank & Trust Co. of Utica* v. *Speaker,* 159 Misc. 427 (287 N. Y. Supp. 831); *Cook* v. *Donner,* 145 Kan. 674 (66 Pac. [2d] 587, 110 A. L. R. 244); *Stager* v. *Junker,* 14 N. J. Misc. 913 (188 Atl. 440); *Ridge Investment Corp.* v. *Nicolosi,* 15 N. J. Misc. 569 (193 Atl. 710). In none of the cases above cited, except the last from New Jersey, was the party who stood in the position of plaintiff in the instant case permitted to recover. In the cases wherein the question is involved, the theory of the decision seems to be that since the Home Owners' Loan Corporation is a public agency, violation of

the mortgagee's agreement above quoted is a fraud upon the public and therefore unenforceable as a matter of public policy. It is somewhat difficult to reach the conclusion that such a transaction is a fraud upon the public when it is consummated, as in the instant case, with full knowledge and consent on the part of the representative of the Home Owners' Loan Corporation. For this reason we find ourselves unable to go as far as did the supreme court of Kansas in the case of *Cook* v. *Donner, supra,* wherein it is said:

"So such agreements would seem to be prohibited whether they be secret or not."

However, it is somewhat important to note that in this Kansas case the security taken by the mortgagee was against the identical property covered by the Home Owners' Loan Corporation loan, not security against separate property owned by the mortgagor, as in the instant case. In the earlier one of the two cases decided by the supreme court of New Jersey (*Stager* v. *Junker, supra*) it was held that a secret agreement between the mortgagor and the mortgagee whereby the former undertook to save the latter from loss in consequence of his having accepted Home Owners' Loan Corporation bonds, was unenforceable. The court said:

"By means of the secret agreement the plaintiff could not defeat the express terms of his own agreement to accept the bonds of the lending agency in full settlement of defendants' obligation."

But the same court in its later case reached the conclusion that an obligation of this character entered into by the mortgagee with the mortgagor, with the knowledge of the representative of the Home Owners' Loan Corporation, was valid and enforceable. It may be noted that this decision was

subsequent to each of the decisions hereinbefore cited. The New Jersey court said:

"We are unable to agree with the contention of the appellants that the agreements for payments over and above the amount of the Home Owners' Loan Corporation mortgage are entirely void and illegal. The most favorable view of the statute and the cases thereunder cited would be that fraudulent agreements, made in collusion to induce the granting of the mortgage loan by the corporation, are unenforceable. As stated, the factual finding here is that there was no fraud or collusion, and that the arrangement was openly made with the knowledge of all parties, including the representative of the corporation." *Ridge Investment Corp.* v. *Nicolosi, supra.*

We are of the opinion that there are several phases of the instant case which are of particular importance. First, that at the time the Home Owners' Loan Corporation loan was solicited the period of redemption after foreclosure had fully expired and the plaintiff was the absolute owner of the property upon which the Home Owners' Loan Corporation loan was sought. The real transaction was a purchase of the property by the defendants from the plaintiff. Further, the obligation which plaintiff now seeks to enforce in no way constituted a lien upon the property covered by the Home Owners' Loan Corporation mortgage. Instead it was a bill of sale or chattel mortgage covering personal property of defendants which was in no way related to nor used in connection with the real estate on which the Home Owners' Loan Corporation took security. The chattel mortgage obligation which defendants now seek to avoid was in fact accepted by plaintiff in part payment for the conveyance of the real estate to de-

fendants. The transaction did not minimize the security taken by the Home Owners' Loan Corporation incident to its mortgage. And still more important, the transaction on the part of the plaintiff in the instant case was in no way characterized by fraud, secrecy or collusion. On the contrary the details were fully revealed to the Home Owners' Loan Corporation representative pending the negotiation of the loan from the corporation. Under the circumstances we are unable to find any justification for holding that the obligation which plaintiff seeks to enforce is void on the ground of public policy.

The decree entered in the circuit court is affirmed, with costs to appellee.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.