**THE DAYTON MORTGAGE & INVESTMENT CO v THEIS, et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1558.  Decided May 18, 1939

Estabrook, Finn & McKee, Dayton, for plaintiff-appellant.

Dale Hodapp, Dayton, for defendants-appellees.

**OPINION**

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas of Monegomery County, Ohio.

The cause originated in the Municipal Court of Dayton, Ohio, where judgment was rendered for the plaintiff for the full amount claimed.

Appeal was taken to the Common Pleas Court, where the judgment was reversed.

There is very little controversy on the questions of fact.

On May 1, 1926, the defendants entered into a contract with Norman and Jessie Keith for the purchase of property located at 1033 Huffman Avenue, Dayton, Ohio.

On October 4, 1927, the Keiths assigned their interest in the land contract to plaintiff.  During the year 1933 the defendants as a result of the economic depression were unable to meete their obligations and became delinquent in their payments to the Dayton Mortgage and Investment Company. In order to refinance their obligation, defendants made application to the Home Owners' Loan Corporation on February 17,

1934, and thereafter the Loan Corporation determined that defendants were eligible to receive the benefit of the Home Owner's Loan Act.

It is the claim of the Dayton Mortgage and Investment Company, supported by testimony, that on or about April 4, 1934, they received some form of communication from the Home Owners' Loan Corporation which advised them that the bonds to be issued by the corporation at their face value would not be sufficient to pay off the balance, including interest, due from the Theis's.

On this same day, April 4, 1934, the plaintiff caused to be mailed to the defendant Clem Theis, a letter requesting that he call at their office for the purpose of discussing the matter of the loan with the Home Owners' Loan Corporation.

The plaintiff presents evidence that on April 7 following, Mrs. Theis called at the office and was then advised that the amount obtainable from the Home Owners' Loan Corporation would not be sufficient to pay plaintiff's claim in full. Upon inquiry, Mrs. Theis was advised that the exact amount was not then ascertainable, but whatever the amount was, they requested that she and her husband execute a note for such balance, the same to be paid in such installments as they could make. Plaintiff presented evidence that Mrs. Theis agreed to this proposition. She, however, when first called as a witness for cross-examination, denied making such promise, but says that she told the president of the company that he would have to see Mr. Theis. When called to the stand again in presentation of defendants' case, she substantially qualified her original denial. No claim is made by plaintiff that they contacted Mr. Theis before the transaction was closed.

Clem Theis was called as a witness, first by cross-examination by plaintiff and afterwards on his own behalf. He admits that he was advised by Mrs. Theis that plaintiff was wanting payment of the difference between their total claim, including interest, and the face of the bonds which they were receiving from the Home Owners' Loan Corporation. He also testifies that some months after the transaction was closed that he went to the office of the plaintiff, in answer to a letter received from them, and at that time stated that if Mrs. Theis had promised to give a note, the same would be given.

At no time was the note given to plaintiff, and on November 19, 1936, statement of claim was filed in the Municipal Court of Dayton, Ohio, praying for judgment in the sum of $165.18, with interest.

Defendants filed answer and after admitting certain allegations of the complaint, denied all others. The allegations of the complaint relative to the agreement to execute a note are included in the denial.

The following paragraph of the answer presents the vital issue:

"These defendants further say that at the time of said refinancing with the Home Owners' Loan Corporation, that the plaintiff herein, in accordance with the Home Owners' Loan Acts, entered into written agreement with the Home Owners' Loan Corporation, in which agreement it was provided that in consideration of the refunding and of the loaning to these defendants of a certain sum of money and/or bonds of the Home Owners' Loan Corporation, that the plaintiff herein would accept in full settlement of their claim against these defendants, a certain sum of cash and/or bonds the exact amount of which is unknown to these defendants at this time, but will be shown at the time this cause comes on for trial."

"These answering defendants further say that in consideration of said agreement entered into between the plaintiff herein and the Home Owners' Loan Corporation, the Home Owners' Loan Corporation paid and delievered to the plaintiff herein, cash and bonds of the Home Owners' Loan Corporation, the sum and amounts provided in said agreement and the plaintiff herein, then and there, received to its full satisfaction, discharged of the sum in this action demanded."

Defendants, in support of the above quoted averments of their answer, presented Exhibits B and C, which were admitted in evidence and are made a part of the bill of exceptions. Both exhibits are photostatic copies and apparently are on forms provided by the Home Owners' Loan Corporation. Both are dated April 14, 1934. Exhibit B purports to be an itemized statement of balance due The Dayton Mortgage and Investment Company on their land contract. Under tabulation (a) principal balance, is given the figure $2811.95 Under (b), interest to April 14, 1934, $57.49. Total $2869.44. Immediately following is the following:

"We hereby agree to accept $2730.14 in full settlement of the above claim in Home Owners' Loan bonds. Signed The Dayton

Mortgage and Investment Company, by J. M. Huffman, President."

Exhibit C has the following heading:

"Owner's consent to take bonds. Homestead purchased on Contract."

This form document is addressed to the Home Owners' Loan Corporation and recites that the undersigned is the holder of the contract which constitutes a claim on the title to the home property of Clem and Anna Theis, located at 1033 Huffman Avenue, Dayton, Ohio, in the sum of $2869.44, including unpaid balance of principal and interest to date. Then follows this paragraph:

"Being informed that said owner has made application to the Home Owner's Loan Corporation to refund his said indebtedness, the undersigned has considered the method of refunding mortgages provided in Home Owners' Loan Act of 1933, as passed by Congress and approved by the President, and the undersigned hereby consents, if said refunding can be consummated, to accept in full settlement of the claim of the undersigned, the sum of $2730.14, face value of the bonds of Home Owners' Loan Corporation to be adjusted, with not exceeding $25.00 cash and thereupon to release all claims of the undersigned against said property."

The following paragraph provides that the consent shall be binding for a period of ninety days from date. Signed, The Dayton Mortgage and Investment Company, by J. M. Huffman, President.

The HOLC loan was apparently closed on June 26, 1934, as evidenced by the following receipt appended to Exhibit B:

"6/26-34. Received authorization for HOLC bonds for $2725.00 and check for $5.14 on this account. Signed The Dayton Mortgage and Investment Company, by Cleata Puterbaugh, Secretary and Treasurer."

As heretofore stated, the Municipal Court resolved the facts and the legal questions involved in favor of the plaintiff. We are favored with copy of the written opinion of the judge of the Municipal Court.

In the Common Pleas Court the finding was against the plaintiff and in favor of the defendants. No written opinion was prepared in the latter court, but we are advised by counsel for appellent that the judgment of the Municipal Court was reversed on the sole ground that the contract sued upon was against public policy and void.

Counsel for the respective parties present very able and comprehensive briefs. We have carefully examined all cases cited. No Ohio cases are cited.

If we hold for the appellant in this case, we will be required to reverse a decision released by this court on January 17, 1939, **Bell et v Dyer, et, Franklin County, No. 2720.** In this case it conclusively appeared that the Dyers, who owed the Bells, had agreed to give them a mortgage second to the HOLC mortgage. In the application of the Dyers to the HOLC for a loan, the Bells had agreed to accept the proceeds of the loan for their debt. We relied upon Cook, etc., v Donner, etc., (100 Kans.) 110 A. L. R., 244, and cases cited in the annotations at page 250. We said, these authorities are definite and in accord in holding that agreements such as the one upon which the plaintiff relied in this case, are against the spirit and purpose of the Home Owners' Loan Act and should not be enforced.

Many cases are cited from courts of last resort in other jurisdictions having a kindred question under consideration. There seems to be universal finding that where there is a showing of fraud, secrecy, duress or collusion, a promise to pay a sum in addition to the HOLC avails is not enforceable at law. A few of the cases go farther and hold that even in the absence of fraud, secrecy, duress or collusion, a promise to pay a balance is not enforceable.

We will now take up other cases which we have considered:
**Bay City Bank v White et, 283 Michigan (277 N. W., 888):**
The syllabus in this case reads as follows:

"Where a mortgagee, though signing a mortgagee's consent to take bonds of the Home Owners' Loan Corporation for an amount loaned by that corporation, which consent contained a waiver of claims against the property or the mortgagor, took a note and chattel mortgage on other property for the balance of its claim, without fraud, secrecy, or collusion, and with knowledge of the corporation's representative, the note and chattel mortgage were not void as against public policy."

By reading the statement of facts in the above cause, we ascertain that the holder of the loan which was being taken up by the HOLC bonds, expressly stipulated in their consent to take such bonds that the

debtor was executing and had executed to them a note and mortgage on another property to take care of the difference between the face of the HOLC bonds and the total original obligation. The amount of this new note and mortgage was stated to be $3200.00. These facts very effectively brought home to the HOLC representatives before their loan was consummated the condition under which the lien of the senior claimant was being released upon the home property.

**Cook v Donner, et (Kansas) 66 Pacific, 2d Series, 587.**

The second syllabus as prepared by the court, reads as follows:

"2. Where a mortgagee at the same time or after he executes to the Home Owners' Loan Corporation a release of all his claims against his debtor, and receives a less amount in bonds from the corporation making the loan to the debtor, agrees secretly or otherwise with the debtor that the debtor will give him a note and second mortgage on the property to cover the loss he has sustained in making the release, such agreement is in violation of the spirit of the act and rules under which the release was made, it denotes bad faith, is against public policy, and the note and mortgage so given are null and void."

**Meek v Wilson et (Michigan), 278 N. W., 731:**

The syllabi in this case, particularly 1 and 2, seem to relax the rule somewhat from that announced in the two previous cases, but a reading of the entire case leads to a different conclusion. On the last page of the opinion the following appears:

"The second mortgage and note, having been given in contravention of public policy should be set aside."

**Ridge Inv. Corporation v Nicolosi et (New Jersey) 193 Atl., 710:**

The second syllabus reads as follows:

"Where note to second mortgagee for difference between amount due on second mortgage and amount of bonds of Home Owners' Loan Corporation, which also held mortgage, and cash received for surrender and cancellation of second mortgage was executed without fraud or collusion and in presence of representative of corporation, and amount of property mortgaged exceeded amount of mortgage to corporation and amount of note, note was enforceable, as against contention that agreement for payments over and above amount of corporation's mortgage was void."

**Stager v Junker et, (New Jersey), 188 Atl., 440:**

The syllabus reads as follows:

"Mortgagee, agreeing to accept Home Owners' Loan Corporation bonds, bearing lower rate of interest than bonds originally agreed to be accepted, in full settlement of mortgage debt, so as to facilitate loan by such corporation to mortgagor, could not defeat terms of agreement by exacting further secret agreement by mortgagor to pay mortgagee amount of any loss sustained on sale of bonds."

**Chaves County Building & Loan Ass'n. v Hodges, et ux., (New Mexico) 59 Pac., 2d Series, 671:**

Syllabi 1 and 2 read as follows:

"1. Mortgagee's consent to take Home Owners' Loan Corporation bonds constituted a valid agreement to accept bonds of the face value stated in full settlement of its claim against mortgagors."

"2. In action to foreclose mortgage for balance of indebtedness on lot which mortgagee had failed to release from mortgage, notwithstanding its consent to take Home Owners' Loan Corporation bonds in full settlement of its claim against mortgagors, admission of evidence of alleged oral agreement made contemporaneously with execution of consent to effect that mortgagee would execute partial release only held error."

**First Citizens Bank & Trust Co. of Utica v Speaker, et 294 N. Y. Supp., 737:**

Syllabi 1 and 2 read as follows:

"1. Where mortgagee, in connection with procurement of loan from Home Owners' Loan Corporation, discharged mortgages as paid, and delivered note secured by such mortgages to corporation, secret renewal note executed by mortgagors to mortgagee for balance of indebtedness held void as against public policy.

"2. Where mortgagee, in connection with procurement of loan from Home Owners'

Loan Corporation, discharged mortgages as paid, delivered note secured by mortgages to corporation, and received from mortgagors a secret renewal note for balance of indebtedness, mortgagors held not entitled to recover from mortgagee securities given as collateral for secret note which was partial renewal of note for which securities had previously been pledged as collateral security."

**Anderson v Horst et ux., (Pennsylvania), 200 Atl., 721:**

Syllabi 1, 2 and 3 read as follows:

"1. An agreement between mortgagee and home owner without approval of Home Owners' Loan Corporation by which owner assumes or agrees to pay all or any part of mortgage debt which has been settled and released by the refunding effected by the corporation is void as against public policy and cannot be enforced by the mortgagee."

"2. Mortgagors entering into unlawful agreement to pay mortgagee a part of mortgage debt which has been settled and released by the refunding effected by the Home Owners' Loan Corporation cannot use courts of Pennsylvania to recover back payments made by mortgagors to mortgagee pursuant to the agreement."

"3. Mortgagors' unlawful agreement to pay mortgagee a part of mortgage debt which had been settled and released by the refunding effected by Home Owners' Loan Corporation could not be enforced by mortgagee but would be set aside as contrary to public policy."

**Jessewich et ux v Abbene et ux, 277 N. Y. Supp., 599:**

The second syllabus reads as follows:

"2. Where mortgagee received from Home Owners' Loan Corporation the corporation's bonds and small cash payment in exchange for and in full satisfaction of their second mortgage and relinquished $700 balance due thereon, secret collateral agreement between property owners and such mortgagees whereby owners acknowledged $700 indebtedness and agreed to give second mortgage if they could not pay cash held void."

The following additional facts should be stated before announcing the applicable legal principles for Ohio:

Under the HOLC Act, the amount of bonds which may be issued under the act shall not exceed 80% of the appraised value of the premises.

Under no circumstances may a reloan be made to secure the original lien holder, in excess of the appraised value less the face of the bonds.

In the instant case, the amount of plaintiff's claim would not exceed the total appraisement, diminished by the bonds given by the HOLC to the plaintiff.

The purpose of the legislation creating the HOLC and providing for its operation seems to be to assist home owners who through the financial depression found themselves in a position from which they could not extricate themselves. In no sense was it intended as an aid to ▮▮▮▮▮ the holder of the securities, except as it would place in the hands of such lien holder bonds in the nature of an active security.

Many lien holders found themselves in a position where they were not receiving anything by way of principal or interest, and in many instances would not desire to buy the property in at foreclosure sale.

The administrators of the HOLC not only made the appraisal of the property but also in practice made an investigation of the resources and obligations of the owner so as to ascertain whether or not he could in all probability over a period of years reclaim and hold his home. This is the underlying reason why the courts have held that secret arrangements under which the home owner will obligate himself to pay the difference between the amount due to the original lien holder and the amount of bonds issued by the HOLC were void and against public policy.

Of course, the lien holder was under no obligation to consent to release his lien and take bonds in payment. He was in a position to decline to do anything less than the payment of his entire claim with interest. The HOLC had the right in its discretion to provide the condition upon which it would make a loan, on such terms as it saw fit, among which might be the cancellation of the lien holder's claim in consideration of receiving the bonds of a certain face value. When the agreement was made, whatever it was, and consummated, the parties were bound.

It is our conclusion that the proper rule to be followed in Ohio is that where full disclosures are made, and in the absence of fraud, secrecy, duress or collusion, the home owner may contract with the original lien

holder to take care of the difference between the total amount due and the face of the bonds, subject only to the limitations under the HOLC Act. However, where the HOLC administrators are not advised of such independent contract, and the lien holder has agreed to accept

**Headnote 3.** the bonds in full settlement of his claim, such contract is thereby rendered void as against public policy.

The theory of public policy arises through the nature and purposes of the HOLC Act. The public through this legislation are interested in home owners being able to reclaim their homes. If secret, additional obligations are permitted, the object of the law will not be promoted.

Applying these principles to the instant case, we find that the plaintiff executed an instrument to the Home Owners' Loan Corporation on April 14, 1934, wherein it agreed to accept $2730.14 in Home Owners' Loan bonds in full settlement of its claim.

We further find that on June 26, 1934, it received bonds in the amount of $2725.00 and cash in the sum of $5.14.

We further find that there is no evidence tending to show that the administrator of the HOLC had any knowledge of any arrangements through which the Home Owners were to be liable for the $165.00 now involved, in the present action.

We also find that the burden would be upon the plaintiff to present evidence of such knowledge in view of the agreement to accept Home Owners' Loan bonds in full settlement.

The judgment of the Common Pleas Court will be affirmed and costs adjudged against the plaintiff.

HORNBECK, PJ, and GEIGER, J, concur.