KIVETT v. CARDWELL. No. 1.—175 S. W. (2d) 334.

Eastern Section. March 11, 1943.

Petition for Certiorari Denied by Supreme Court, October 2, 1943

John P. Davis, of Tazewell, for appellant Mrs. Ad Cardwell, Adm'x.

Roger Kivett and James P. Kivett, both of Tazewell, and Donaldson, Montgomery & Kennerly, of Knoxville, for appellee Cordie Kivett.

J. R. Ketron, of Tazewell, for appellee Barbara R. Carr, Ex'x.

McAMIS, J. The question for decision upon this appeal is the validity of a second deed of trust and an unsecured note executed by Mrs. Cordie Kivett incident to the refinancing of mortgage indebtedness against her home through the Home Owners' Loan Cororation. The Chancellor held the second deed of trust and note secured thereby and the unsecured note void and unenforceable and also relieved of liability the estate of Dr. M. B. Carr, deceased, who was accommodation endorser on both notes. From this holding Mrs. Ad Cardwell, administratrix of the estate of Ad Cardwell, deceased, holder of the notes, has appealed.

The basic facts are: On December 13, 1929, Mrs. Kivett joined with her husband, James P. Kivett, an attorney of the Tazewell bar, in executing a deed of trust upon the Kivett home to secure two notes, one to Claiborne County Bank in the sum of $2,000 and another to Ad Cardwell in the sum of $3,000. Both of these notes were endorsed by Dr. M. B. Carr, as accommodation endorser.

In June 1934 the Bank's note had been reduced to approximately $1,600 but interest payments on the Cardwell note and taxes to the extent of about $400 had become delinquent and apparently Mrs. Kivett was unable to meet these obligations.

On March 24, 1934, an application was made in the name of James P. Kivett to the Home Owners' Loan Corporation, reciting a total lien indebtedness of $5,337.55 and setting forth applicant's belief that he could save the property by meeting installments out of his income

of approximately $150 per month should a loan be granted.

On May 5, 1934, the property was appraised by representatives of H. O. L. C. at $4,806 and on the same date the loan was recommended by the local representative of H. O. L. C. It was approved by the district manager on June 18, 1934.

On June 25, 1934, Cardwell, as mortgagee, upon a "form made and approved by Mr. Cohn, District Attorney (for H. O. L. C.), Memphis, Tennessee," executed an agreement to accept a second mortgage in the amount of $950. This agreement recites: "Which amount added to the amount of the loan which the Home Owners' Loan Corporation will make to the applicant does not exceed $4,844.80." (This amount was doubtless thought to be the appraised value of the property but which was, in fact, $4,806, a difference of $38.80.) The agreement expressly provides that said second mortgage should not be recorded until after the trust deed of the H. O. L. C.; that the indebtedness secured thereby should not mature within less than three years after the recording of the deed of trust of H. O. L. C.; that the holder of the second mortgage indebtedness, in event of default under the first deed of trust of H. O. L. C. might declare all of the second mortgage indebtedness immediately due and proceed to foreclose on said second mortgage; that, after said three year period expired, the second mortgage might contain all of the regular provisions of any second mortgage or trust deed concerning acceleration, foreclosure, etc.; that said second mortgage or trust deed would be presented to, and approved by a local representative of the Home Owners' Loan Corporation before

being recorded and, in event of a violation of any of the foregoing provisions, the applicant or the attorney of H. O. L. C. for the county in which applicant's property is situated should be entitled to injunctive process as provided by law.

We infer that this agreement was attached to, and became a part of, the application for a loan made by Mr. Kivett. At any rate, it is not disputed that the district' office of H. O. L. C. for the State of Tennessee was apprised of Cardwell's proposal to accept a second mortgage note in the amount of $950 but there is no proof that H. O. L. C. expressly *approved* the proposal; nor is there any proof that H. O. L. C. or any of its representatives knew that the proposal included an unsecured note of $728 representing the balance of the Cardwell indebtedness. Mr. Cardwell died before the present suit was filed and this may account for the fact that the record does not reveal all of the details of the transaction.

It is undisputed that the proceeds of the loan, after deducting expenses, were applied toward discharging the lien indebtedness, first to the payment of taxes, second to discharge the balance due on the Bank's note and the remainder applied upon the Cardwell note. Except as to the $728 unsecured note, there is no suggestion of secrecy, fraud or oppression. The manifest intention was to give Cardwell a second mortgage note to represent the difference between the H. O. L. C. mortgage and the appraised value of the property. The unsecured note was admittedly given to represent indebtedness wholly in excess of the appraised value.

H. O. L. C. was created by Federal Statute, 48 U. S. Statutes at Large, 128, 12 U. S. C. A., sec. 1461 et seq.,

for the declared purpose of providing emergency relief to overburdened home owners unable to amortize their mortgage indebtedness. The Act expressly empowered the Board of Directors of the Corporation to "make such bylaws, rules and regulations, not inconsistent with the provisions of this section, as may be necessary for the proper conduct of the affairs of the Corporation." Sec. 1463(k). This power was exercised in reference to acceptance of applications contemplating the execution of second mortgages or deeds of trust to secure indebtedness of the applicant over and above the amount loaned by H. O. L. C. by numerous resolutions of the Board. In essence these resolutions evince a consistent purpose not to participate in the refinancing of mortgages where an effort is made to cause the owner to pay more than his debt with legal interest by forcing him to accept any loss represented by the difference between the face value and the market value of H. O. L. C. bonds but, while it looked with disfavor upon second mortgages, H. O. L. C. would not refuse aid though it should become necessary for the home owner to execute a second mortgage if the second mortgage did not exceed the difference between the mortgage indebtedness held by H. O. L. C. and the appraised value of the property.

We do not think, after a careful study of the resolutions passed by the Board, that it was ever contemplated that where the second mortgage indebtedness did not exceed the difference between the first mortgage of H. O. L. C. and the appraised value of the property such second mortgages would have to be approved by the Board itself before they would become a valid lien upon the property. To illustrate this point we quote: "The

*agent* of the Corporation, however, is directed not to refund with bonds a portion of the indebtedness of a home owner against his home, leaving a portion of the same undisposed of, unless the same is to be either cancelled or carried unsecured or carried as a second mortgage .on such terms that the home owner will have a reasonable probability of being able to pay the same as well as meet his obligation to the Corporation.'' . (Italics. ours.)

From this language the intention is apparent that authority to measure the propriety of permitting a second mortgage against the underlying purpose of H. O. L. C. should be reposed in agents of the Corporation. In this case we have only to decide that the district officer for the State charged with administering the affairs of the Corporation within the State is an ''agent'' within the meaning of the resolution and clothed with power to act for it. We have no doubt that such an agent would have authority to effectuate the declared policy of the Corporation to permit the execution of second mortgages where proper safeguards are thrown around the home owner in respect to the amount of the indebtedness secured, maturity dates, interest rates and other circumstances which might affect his ability to pay both the first and second mortgage debts. That State Managers were intended to have this power is clearly indicated by specific instructions dated January 31, 1934, that no second mortgage or deed of trust should be allowed under any circumstances for more than the difference between the indebtedness owing H. O. L. C. and the appraised value of the property and that in no case should the second mortgage or deed of trust be in terms that would make

the mortgagor's payments to H. O. L. C. a hardship. The instruction concludes: ''You are hereby instructed that the above provisions are to be strictly complied with upon receipt of this bulletin.''

As already noted, the State office of H. O. L. C. was apprised of the second mortgage in this case. No secrecy, fraud or oppression having been shown in connection with the execution of the second mortgage which the present custodian of the records of the Tennessee State office testified was indicated by the application in the files of H. O. L. C. when the loan was closed, we are to determine in this case whether express ratification and approval was also necessary.

 Although there are cases to the contrary, notably McMillan v. Palmer, 198 Ark. 805, 131 S. W. (2d) 943, and other cases from that State, it appears well settled that second mortgages executed in pursuance of secret agreements between the mortgagor and mortgagee in connection with the negotiation of a loan with the Home Owners' Loan Corporation are contrary to public policy and void. McAllister v. Drapeau, 14 Cal. (2d) 102, 92 P. (2d) 911, 125 A. L. R. 800.; Woods v. Kern County, etc., Ass'n, 34 Cal. App. (2d) 468, 93 P. (2d) 837; Adams Co. v. Pacific States Savings & Loan Co., 34 Cal. App. (2d) 723, 94 P. (2d) 370; Johnson v. Matthews, 301 Ill. App. 295, 22 N. E. (2d) 772; Council v. Cohen, 303 Mass. 348, 21 N. E. (2d) 967; Chaves County Building & Loan Ass'n v. Hodges, 40 N. M. 326, 59 P. (2d) 671; Masci v. Moose Building & Loan Ass'n, 33 Pa. Dist. & Co. R. 458.

Other cases use language from which it might be inferred that both knowledge and approval of H. O. L. C. must be shown before such second mortgages can be sus-

tained. Markowitz v. Berg, 125 N. J. Eq. 56, 4 A. (2d) 410; Anderson v. Horst, 132 Pa. Super. 140, 200 A. 721. In the first of these cases it was held that notice to the fee attorney of H. O. L. C. was not notice to H. O. L. C. and the question of the effect of knowledge without approval was not, under the facts, open for consideration. The facts of the Anderson case are similar.

We think it may be fairly held that when it is shown that H. O. L. C. had knowledge of the fact that the proposed plan of rehabilitation included the execution of a second mortgage for an amount not exceeding the difference between the H. O. L. C. loan and the appraised value and thereafter completes the loan its consent and approval are to be inferred. This conclusion is fortified by numerous cases holding such second mortgages valid where H. O. L. C. had notice before closing the loan of the intention of the borrower and the mortgagee to make settlement in this manner.

In Ridge Inv. Corp. v. Nicolosi, 15 N. J. Misc. 569, 193 A. 710, the court, in dealing with an analogous case, said: "We are unable to agree with the contention of the appellants that agreements for payments over and above the amount of the Home Owners' Loan Corporation mortgage are entirely void and illegal. The most favorable view of the statute and the cases thereunder cited would be that fraudulent agreements, made in collusion to induce the granting of the mortgage loan by the corporation, are unenforceable. As stated, the factual finding here is that there was no fraud or collusion, and that the arrangement was openly made with the knowledge of all parties, including the representative of the corporation."

In dealing with this question the Supreme Court of Pennsylvania said: "Matters to be considered are the

absence of collusion or concealment of the obligation from the authorized officials of the government agency, and their consent to the mortgagor's continued obligation for the balance. See Bay City Bank v. White, 283 Mich. 267, 277 N. W. 888; Ridge Inv. Corp. v. Nicolosi, 15 N. J. Misc. 569, 193 A. 710. The value of the property as compared with the total amount of the obligations assumed by the home owner is a circumstance to be considered. Meek v. Wilson, 283 Mich. 679, 278 N. W. 731; Ridge Inv. Corp. v. Nicolosi, supra.'' Keystone Bank of Spangler v. Booth, 334 Pa. 545, 6 A. (2d) 417, 420.

An exhaustive and well-considered opinion by the Court of Appeals of Ohio is to be found in Dayton Mortg. & Inv. Co. v. Theis et al., 62 Ohio App. 169, 23 N. E. (2d) 511, 515. After reviewing numerous cases dealing with the question, it was there said: ''It is our conclusion that the proper rule to be followed in Ohio is that where full disclosures are made, and in the absence of fraud, secrecy, duress or collusion, the home owner may contract with the original lienholder to take care of the difference between the total amount due and the face of the bonds, subject only to limitations under the Home Owner's Loan Act. However, where the loan corporation administrators are not advised of such independent contract, and the lienholder has agreed to accept the bonds in full settlement of his claim, such contract is thereby rendered void as against public policy.''

We think the foregoing rule is not only just and sound but is conducive to a furtherance of the corporate purpose to alleviate the financial distress of home owners. By permitting the execution and acceptance of second mortgages, within the confines of the rule and limitations imposed by regulations of H. O. L. C., many homes may

be re-financed which would, otherwise, be foreclosed upon and lost to the owner. Often appraisals were made when values were low but expected rise in value with improved economic conditions afforded some hope that by obtaining the relief offered by H. O. L. C. the owner might eventually save his home by paying off both H. O. L. C. and the balance due the original mortgagee.

These views accord with our recent holding in Smith v. Redwine, Tenn. App., 168 S. W. (2d) 185, 186, where Judge Burnett, speaking for this Section of the Court, said: "The courts have uniformly held that secret second liens to a senior lien of the H. O. L. C. are void and unenforceable. McAllister v. Drapeau, 14 Cal. (2d) 102, 92 P. (2d) 911, 125 A. L. R. 800; and numerous authorities therein cited. But where the second lien was taken by the creditor with full knowledge of the H. O. L. C., it has been uniformly held that they are valid and enforceable. Bay City Bank v. White, 283 Mich. 267, 277 N. W. 888; Ridge Investment Co. v. Nicolosi, 15 N. J. Misc. 569, 193 A. 710."

The case of Hays v. Commerce Union Bank et al. (Unreported), decided by the Middle Section of this Court, is not in point because, in that case, the agreement was admittedly secret and collusive.

In this case stress is laid upon the fact that the agreement to accept a second mortgage was dated June 25, 1934, and that later, on August 4, 1934, Cardwell agreed to accept in full settlement of his claim of $3,000 the sum of $1,595 face value of bonds of H. O. L. C. It is argued that, being later in point of time, this agreement supercedes the first proposal and should be held a binding release. As stated above, Mr. Cardwell is now dead and there is no explanation of the execution of the consent

agreement on August 4, 1934. However, it is quite clear that all parties considered the various documents as a part of preliminaries leading up to the closing of the loan. We think they can only be so construed and considered.

We have already referred to the fact that the second mortgage exceeded the difference between the appraisd value of the property and the H. O. L. C. loan by approximately $38.80. This difference is doubtless accounted for by the accumulation of interest between the date of the original application and the closing of the loan and was not due to an intentional violation of the policy of H. O. L. C. Under the authorities cited we think the second mortgage is a valid and binding obligation subject only to a remittitur of such excess.

We are of opinion, however, that the unsecured note of $728 is void and unenforceable because no disclosure was made of it to H. O. L. C. The learned Chancellor was correct, in so holding both as to the principal and the surety, now represented by the executrix of Dr. Carr's estate; but was in error in releasing the principal and surety upon the $950 note except to the extent noted. The decree to be here entered will adjudge the second mortgage and note valid, subject only to the remittitur indicated. Costs will be equally divided and the cause remanded for enforcement of the decree to be here entered.

Hale and Burnett, JJ., concur.