HOME OWNERS' LOAN CORP., APPELLEE, *v.* BAKER ET AL., APPELLEES; THE WEISBERGER REALTY CO., APPELLANT.

(No. 1084—Decided March 29, 1944.)

*Messrs. Weygandt & Ross,* for appellee Martha J. Baker.

*Messrs. Buckingham, Doolittle & Burroughs,* for appellant.

DOYLE, J. The question for determination is whether a note and mortgage given by the mortgagor to compensate the mortgagee for a part of a loss sustained by the said mortgagee in accepting bonds of the Home Owners' Loan Corporation in payment of a prior note secured by a mortgage on the same real estate, is unenforceable and void.

The Court of Common Pleas of Wayne county so held, in an action on a cross-petition for judgment on the note and foreclosure of the mortgage given as security therefor, and the present appeal on questions of law is from that judgment.

The legal contest is solely between the mortgagee (The Weisberger Realty Company), and the mortgagors (the Bakers, husband and wife). The Home Owners' Loan Corporation did not plead to the cross-petition of the mortgagee, although it is in the case as the original petitioner for a foreclosure of its first mortgage.

Walker H. and Martha J. Baker, husband and wife, owned a house and lot in the village of Rittman, Ohio. They bought it from The Weisberger Realty Company. They assumed a note and first mortgage held by the Peoples Savings & Loan Company of Wooster, Ohio, and gave a note secured by a second mortgage to their grantor for the balance of the purchase price.

The Bakers experienced difficulty in carrying the two mortgages, and in the year 1934 negotiated with the Home Owners' Loan Corporation for the purpose

of refinancing the tax and mortgage liens upon their property. They were informed that approximately $2,900 or its equivalent in bonds could be made available for payment of the liens; that sum being 80% of the appraised value of the property.

This figure revealed that, after the paramount liens were paid, there would not be sufficient balance to pay in full the additional lien of The Weisberger Realty Co. and that, if the said realty company voluntarily released its note and second mortgage, it would sustain a loss of more than $300.

Possessed of this information, the realty company instructed the Bakers that it would co-operate in the contemplated refinancing arrangement, by releasing its note and mortgage and accepting the bonds made available to it, in the event and upon the condition that the Bakers would execute a new mortgage and a note secured thereby in the sum of $300, so that its loss in the transaction would be thereby lessened.

This was acceptable, apparently, to the Bakers, and the instruments were executed and dated April 30, 1934, and placed in escrow with one Bodager for the purpose of being held until the refinancing was completed and the new Home Owners' Loan Corporation mortgage recorded as a first lien upon the premises.

At about the time of the year the refinancing was completed, the Home Owners' Loan Corporation accepted a note and first mortgage on the property and paid approximately $2,900 in bonds and cash, which was accepted by the various lienholders. After the corporation's mortgage was recorded, the realty company recorded its mortgage as a second lien.

The Home Owners' Loan Act of 1933, 48 Stats. at L., 128, Title 12, Section 1461 *et seq.*, U. S. Code, did not in terms prohibit the owners, Baker, from giving the note in the amount of $300, secured by a second mort-

gage on the property. The act did, however, give the Home Owners' Loan Corporation authority to adopt rules and regulations to govern collateral agreements between the parties. Many rules were accordingly adopted. Whether such rules have the force and effect of law we are not called upon to decide, nor are we called upon to decide whether judicial notice must be taken of them.

(On this point, it is observed that the rules and regulations of the departments, bureaus, agencies, corporations, etc., of the federal government, numbering in the hundreds of thousands, could not be read and certainly not understood in an ordinary judge's lifetime, if such judge were able to find them, with their daily additions, subtractions, modifications and alterations. Further, the observation is made that some of the bureaus, agencies, etc., officially interpret their own rules and regulations, which in some cases are held secret within the agency itself.)

There is, however, sufficient evidence in the record to show that collateral agreements and second mortgages are permitted by the corporation as a part of its refinancing program under certain circumstances. And in this connection, the general rule extant at the time in question was to allow in some instances the giving of a note and second mortgage to make up a loss, if the total of all liens did not exceed 90% of the appraised value, and the giving of which would not likely work an undue hardship on the owner and deprive him of reasonable opportunity to keep up the necessary payments.

Several cases involving the instant question have heretofore been before the Ohio courts. The statement of Judge Barnes in *Dayton Mtg. & Invest. Co.* v. *Theis*, 62 Ohio App., 169, at p. 179, 23 N. E. (2d), 511, seems to accurately pronounce the generally adopted rule:

"* * * where full disclosures are made, and in the absence of fraud, secrecy, duress or collusion, the home owner may contract with the original lienholder to take care of the difference between the total amount due and the face of the bonds, subject only to limitations under the Home Owners' Loan Act. However, where the loan corporation administrators are not advised of such independent contract, and the lienholder has agreed to accept the bonds in full settlement of his claim, such contract is thereby rendered void as against public policy."

See, also, *First Federal Savings & Loan Assn.* v. *Ansell,* 68 Ohio App., 369, 41 N. E. (2d), 420; *Weber* v. *Sternad,* 69 Ohio App., 258, 39 N. E. (2d), 623, affirmed, *Weber* v. *Sternad,* 140 Ohio St., 253, 43 N. E. (2d), 227; Collation of cases in 110 A. L. R., 250; 121 A. L. R., 119; 125 A. L. R., 810.

Faced with a record which shows no fraud, secrecy, duress or collusion, and a note and mortgage which, added to the Home Owners' Loan Corporation note and first mortgage, does not make the total exceed 90% of the appraised value of the property, we direct our attention to the question of proper notice to the corporation.

Subsequent to the escrow of the note and mortgage heretofore noted, and during the preliminary negotiations with the Home Owners' Loan Corporation, The Weisberger Realty Company wrote the Home Owners' Loan Corporation at its Canton office and enclosed its consent to take bonds with the following comment:

"The reason that we did not return these sooner was that we were not able to get any sort of agreement with Mr. Baker to take care of the balance on our mortgage which the settlement would not take care of. We were over to see Mr. Baker several times and could not get anywhere but saw him a few days ago and fin-

ally compromised with him and *he will take care of part of our balance* and we will agree *to take* bonds as per the enclosed consents.'' (Italics ours.)

This letter, although not specifically stating to the corporation how the ''balance'' was to be ''taken care of'' did put them on notice that a balance was to be ''taken care of.''

Later, on December 20, 1934, the realty company wrote the corporation's fee attorney in Wooster (who handled the entire matter for the corporation) as follows:

''I received a call today from Mr. H. P. Henley (counsel for the realty company) who advised me that you wrote him asking that we give you another release of mortgage by separate instrument. I was in his office and he prepared what he believes is what you want on the matter; I trust that this one will be satisfactory. *We also have a second mortgage that we are taking for part of our loss* on the property in the sum of $300 which was signed by both Mr. and Mrs. Baker some time ago and which is being held in escrow until such time as the other second is released as of record. It is being held by a real estate man in Rittman who will release one and put the other one on at once on word from us. I just thought that I would explain all this to you so that everything would be clear and show that we are more than fair on the whole matter.'' (Italics ours.)

This letter, written before the closing of the deal, to the attorney in charge, explicitly notified him of the collateral agreement with the owner, and amplified the previous letter to the corporation in Canton.

Two days later—December 24, 1934—the attorney for the corporation answered to Mr. Henley, attorney for the realty company:

''Today I received a letter from The Weisberger

Realty Company in which it was stated that they proposed to take a second mortgage. The rule of Home Owners' Loan Corporation is where a second mortgage is proposed to be taken, that fact should be made a part of the file originally sent in by me and that all the mortgages dare not exceed 90% of the appraised value of the property. With this information, I do not see how I can close this case, and the Peoples Savings and Loan Company [holder of first mortgage] has advised me that if I do not close it they expect to commence foreclosure.''

However, despite the corporation attorney's statement, he did effect a closing of the case, by mailing the final closing papers to an associate corporation attorney in Barberton with instructions, and a subsequent disbursement of the corporation's bonds and cash.

There is no dispute over the fact, as heretofore stated, that the $300 note and second mortgage, added to the corporation's note and first mortgage, did not make the entire indebtedness exceed 90% of the appraised value of the property. It therefore came within the corporation's regulation, as shown in the record, that ''no second trust or second mortgage will be allowed under any circumstances that is for more than the difference between our appraisal and the amount of our first mortgage.'' The record further shows that the second mortgage contains the following provision: ''It is mutually agreed by and between the parties hereto that no court action or foreclosure proceedings will be instituted on the within mortgage or the note secured hereby for a period of three years.'' This provision is likewise within the regulations of the corporation.

There is nothing before this court which parallels in legal aspects the case of *Weber* v. *Sternad,* 140 Ohio St., 253, 43 N. E. (2d), 227. The note and mortgage in

controversy were obtained before the mortgagee consented to take Home Owners' Loan Corporation bonds, and the fact that some type of financial settlement for a partial repayment of the loss had been made between the Bakers and the realty company, was made known to the office of the corporation in Canton, seasonably and in proper time. In addition to this, the attorney for the corporation was specifically and accurately notified of the entire agreement in sufficient time to notify the Canton office (approximately twenty miles away) and stop the completion of the loan.

(The debated question of whether notice to the fee attorney is notice to the corporation we do not decide. We recognize such notice, however, as evidence of probative value which, coupled with other evidence of the kind depicted in this record, may be sufficient to prove notice to the corporation.)

It is reasonable to infer from the evidence that the Canton office had full knowledge of all the details, and with this knowledge directed the closing of the loan. This inference is given strength by the fact that the rules and regulations of the corporation permitted the giving of a second lien to make up a loss to the mortgagee under certain conditions. None of these conditions were violated, but on the contrary were complied with in every detail. Certainly the vice pointed out by the Supreme Court of Ohio in *Weber* v. *Sternad, supra,* of a note "*secretly* obtained from the mortgagor in known violation of the terms and conditions of the refinancing agreement" (italics ours) does not obtain in this case, because here we have a transaction openly arrived at, with no intention of concealment.

The courts of this state hold that secret collateral agreements in violation of the terms and conditions of the refinancing agreement are illegal and void. And this court would so hold in such a case, and follow the

legal pattern set out by the Supreme Court in *Weber* v. *Sternad, supra,* and in other Ohio cases cited.

However, in cases where there is a seasonable disclosure of a collateral agreement, without the element of fraud or duress, and within the corporation's rules as to an allowed total debt, made before an acceptance of an agreement to take bonds, such collateral agreement becomes a part of the entire transaction, when made known to the Home Owners' Loan Corporation and directly or constructively accepted, and the formal language of the consent to take bonds in full satisfaction of the debt is altered in legal contemplation so as to make the collateral agreement a part of the entire contract; and under such circumstances a note and second mortgage given by the owner to the original mortgagee is based upon consideration, is not against public policy, and is valid.

We think the case at bar therefore presents only the factual question of seasonable and reasonable notice to the Home Owners' Loan Corporation, and the members of this court are of the opinion that, on this question, reasonable minds can conclude only that such notice was given.

The judgment is reversed, and the cause is remanded to the Court of Common Pleas, with instructions to enter judgment on the note and of foreclosure of the mortgage.

*Judgment reversed.*

STEVENS, P. J., and WASHBURN. J., concur.