ARNOLD ET AL. *v.* MOATS ET AL.

[No. 18,180. Filed May 16, 1952.]

432

*Solly K. Frankenstein* and *Lester E. Frankenstein,* both of Fort Wayne, for appellants.

*Clarence R. McNabb* and *Thomas A. Gallmeyer,* both of Fort Wayne, for appellees.

ACHOR, J.—This is an action by appellees to foreclose a second mortgage on real estate against the appellants. This mortgage was executed in connection with the refinancing of the property, whereby appellants took title to the real estate formerly purchased by appellants from appellees under a conditional sales contract. A compromise settlement of the indebtedness was accomplished by the execution of a first mortgage to the Home Owners Loan Corporation by appellants, and the acceptance of HOLC bonds therefor by appellees, and further, by the execution of a second mortgage by appellants to appellees for part of the balance remaining due under the contract. It is this second mortgage which is involved herein.

Appellants' answer consisted of paragraphs of admission and denial and several paragraphs of affirmative answer. The latter asserted the following matters of affirmative defense: (1) That appellees, by written agreement, had accepted bonds of the HOLC in full settlement of their claim against appellants, and that a second note and mortgage was without consideration. (2) That by the terms of the HOLC Act the acceptance of HOLC

bonds by the creditor was in full settlement of the obligation and, in event the amount of the bonds accepted was less than the amount of the original mortgage or contract indebtedness, that the corporation was to credit the difference to the indebtedness of the home owner, thus reducing the amount of his indebtedness to the amount of the HOLC mortgage. (3) That, although the HOLC Act gave the HOLC authority to make supplemental rules and regulations, and, although such rules permitted the execution of second mortgages to cover part of the difference between the maximum HOLC mortgage and the original obligation, such practice was limited by the HOLC to the following circumstances which, allegedly, did not exist in this case, as follows:

(a) That any such second mortgages must be approved by both the Loan Review Committee and the Board of Directors in Washington, D. C.

(b) That the home owner should have a reasonable probability of being able to pay his full obligation, both to the HOLC and the second mortgagee and without imposing a hardship on the mortgagor.

Appellants have appealed from an adverse judgment of foreclosure. The error assigned in appellants' motion for new trial and relied upon in this appeal is that the finding of the court was not sustained by sufficient evidence and is contrary to law.

The appellate courts of this state have not been called upon heretofore to render an opinion regarding the law under the circumstances presented in this case. There is some conflict in the decisions of other states. However, the majority rule, and the rule which seems to us most logical, is stated in the following cases. In *Home Owners' Loan Corp.* v. *Baker*

(1944), 73 Ohio App. 195, 202, 203, 55 N. E. 2d 426, the court stated:

"The courts of this state hold that secret collateral agreements in violation of the terms and conditions of the refinancing agreement are illegal and void. . . .

"However, in cases where there is a seasonable disclosure of the collateral agreement, without the element of fraud or duress, and within the corporation's rules as to an allowed total debt, made before an acceptance of an agreement to take bonds, such collateral agreement becomes a part of the entire transaction, when made known to the Home Owners' Loan Corporation and directly or constructively accepted, and the formal language of the consent to take bonds in full satisfaction of the debt is altered in legal contemplation so as to make the collateral agreement a part of the entire contract; and under such circumstances a note and second mortgage given by the owner to the original mortgagee is based upon consideration, is ·not against public policy, and is valid."

The law above enunciated is in harmony with that of *Dayton Mtg. & Invest. Co.* v. *Theis* (1939), 62 Ohio App. 169, 179, 23 N. E. 2d 511, in which the court stated:

"It is our conclusion that the proper rule to be followed in Ohio is that where full disclosures are made, and in the absence of fraud, secrecy, duress or collusion, the home owner may contract with the original lienholder to take care of the difference between the total amount due and the face of the bonds, subject only to limitations under the Home Owners' Loan Act. However, where the loan corporation administrators are not advised of such independent contract, and the lienholder has agreed to accept the bonds in full settlement of his claim, such contract is thereby rendered void as against public policy.

"The theory of public policy arises through the nature and purposes of the Home Owners' Loan

Act. The public through this legislation are interested in home owners being able to reclaim their homes. If secret, additional obligations are permitted, the object of the law will not be promoted."

Also, in *Kivett* v. *Cardwell* (1943), 26 Tenn. Appeals 372, 380, 382, 175 S. W. 2d 334, the court, in considering the validity of a lien inferior to that held by the Home Owners' Loan Corporation, stated:

". . . It may be fairly held that *when it is shown that H. O. L. C. had knowledge* of the fact that the proposed plan of rehabilitation included the execution of a second mortgage for an amount not exceeding the difference between the H. O. L. C. loan and the appraised value and thereafter completes the loan its *consent and approval are to be inferred.* This conclusion is fortified by numerous cases holding such second mortgages valid where H. O. L. C. had notice before closing the loan of the intention of the borrower and the mortgagee to make settlement in this manner." (Our italics.) 125 ALR 800, Note III, p. 811; *Markowitz* v. *Berg* (1939), 125 N. J. Eq. 56, 4 A. 2d 410; *Anderson* v. *Horst* (1938), 132 Pa. Superior Ct. 140, 200 Atl. 721; *Cannon* v. *Blake et al.* (1944), 353 Mo. 294, 182 S. W. 2d 303.

. . .

" 'Where the second lien was taken by the creditor with full knowledge of the H. O. L. C., it has been uniformly held that they are valid and enforceable. Bay City Bank v. White, 283 Mich. 267, 277 N. W. 888; Ridge Investment Co. v. Nicolosi, 15 N. J. Misc. 569, 193 A. 710.' "

We believe that the issues presented by appellants' contentions one (1) and two (2) are adequately answered by the above decisions in favor of appellees. However, the items (a) and (b) of appellants' contention three (3) deserve further consideration. Appellants contend that there was no consent by any author-

ized agent of HOLC to the execution of the second mortgage.

It is admitted that Lake E. Rariden, who prepared the second mortgage, and before whom it was signed by appellants, was only a fee attorney for HOLC and did not have authority to bind his principal by his consent.

It is also admitted that Carl J. Getz, who was district appraiser and a member of the district loan committee for the HOLC and "had charge of the appraisers and compromised the loans applied for by the various mortgage owners" in the Ft. Wayne District, had, by written indorsement, compromised the indebtedness with appellees as follows: "Second mortgage $960.00 . . . Scale down $783.32." The evidence is also undisputed that the indebtedness of $11,344.32 was thereafter compromised by a HOLC loan of $9,600.00, a second mortgage of $960.00 and a "scale down" of $784.32. However, appellants insist that there is no showing that the "compromise" was approved by the Board of Directors in Washington, D. C. as required by Bulletin #29 of the HOLC.

Almost identical facts on this issue were before the court in the case of *Home Owners' Loan Corp.* v. *Baker, supra.* In that case the court held that knowledge on the part of the fee attorney and the Canton office of the HOLC, coupled with other evidence of the kind depicted in this record, was sufficient to prove notice to the corporation. Likewise, in the case of *Kivett* v. *Cardwell, supra,* the court stated: "It may be fairly held that when it is shown that HOLC had knowledge of the fact that the proposed plans of rehabilitation included the execution of a second mortgage for an amount not exceeding the difference between the HOLC loan and the appraised

value, and thereafter completes the loan, its *consent and approval are to be inferred*. This conclusion is fortified by numerous cases holding such second mortgages valid where HOLC had notice, before closing the loan, of the intention of the borrower and the mortgagee to make a settlement in that manner." (Our italics.)

We conclude therefore, that under the facts before us that "consent and approval" of the HOLC for the execution of the second mortgage are to be inferred. There is no evidence to the contrary. Therefore, the fact of such consent and approval must stand as proved.

It is further urged by appellants that at the time of the execution of the second mortgage they did not have "reasonable probability of being able to carry his first mortgage to the corporation and the second mortgage indebtedness," as required by Legal Bulletin #1; that the terms of the second mortgage made the appellants' payments to the corporation a "hardship," and that these regulations, as affecting the mortgagors' ability to pay, were not "strictly complied with," contrary to Legal Bulletin #47, but that, to the contrary, there was *no investigation* regarding appellants' ability to pay.

We have concluded that the facts in evidence support an inference that the granting of the second mortgage was with the "consent and approval" of the HOLC. The same facts support an inference that the corporation, being a quasi-governmental agency, made the required preliminary investigation upon which to ground its consent and approval. This inference is supported by evidence that appellants, in making their application for the HOLC, made a charge for a credit report. There is evidence in the record as to appellants' limited income at the time. However, there is no evidence in the record that *no investigation*

was made as to appellants' "reasonable probability" of being able to pay. Therefore, the inference prevails that credit information was obtained and communicated to the proper HOLC officials and, although it may have been inaccurate, the inference prevails that the required administrative act was *performed* by the corporation, and, appellants having accepted the benefits of the compromise with appellees, and appellees having, in good faith, "scaled down" the debt due them in order to effect the compromise, appellants are not in a position now to deny their liability under the mortgage.

It is urged by appellees that, under the pleadings of this case, the burden of proving the allegations of appellants' several paragraphs of affirmative defense was upon the appellants, and, judgment having been determined adverse to the appellants, they have no cause for appeal unless the evidence conclusively supports the allegations of their affirmative defense. A decision of the case upon this issue is not necessary.

However, it is elemental that we will not disturb a judgment where the issue of the appeal is the sufficiency of the evidence to support the judgment, unless the evidence is such that reasonable men were bound to reach a contrary conclusion therefrom. The judgment of the trial court is based upon substantial evidence and reasonable inferences drawn therefrom.

Judgment is therefore affirmed.

NOTE.—Reported in 105 N. E. 2d 833.